# THE LYCOMING FIRE INSURANCE COMPANY

*v.*

## ADELAIDE JACKSON.

1. EVIDENCE—*witness to prove value of building destroyed.* Any person acquainted with property, such as a dwelling house, and its value, or the value of like property, is a competent witness to prove its worth, in a suit to recover for its loss against an insurance company.

2. INSURANCE—*representations made by agent of company without author-
ity.* If a policy of insurance refers to a written application, which is not
signed by the assured, but by an agent of the company, and it is not shown
that the assured authorized it to be made or ratified the same after its exe-
cution, he will not be bound by any representations therein, if they should
prove to be false; nor will the fact that it fails to disclose the title prevent a
recovery for a loss.

3. A condition in an insurance policy making an application referred to
a part of the contract and a warranty by the assured, and declaring that any
false representation by the assured as to the condition, etc., of the property
insured, or any omission to make known every fact material to the risk, or
if the interest of the assured be not truly stated in the policy, the same shall
be void, can not be said to have been violated, when the assured has made
no written application.

4. SAME—*insurer can not take advantage of his own neglect and omis-
sions.* If an insurance policy provides that, if the interest of the assured
be any other than the entire, unconditional and sole ownership for his own
use and benefit, or if the building stands on leased ground, it must be so
represented to the company, and so expressed in the written part of the
policy, otherwise the same shall be void, and the assured states such facts to
the agent, but they are not inserted in the policy, either by accident or de-
sign, such omission will not defeat a recovery in case of a loss.

5. SAME—*failure to disclose fraudulent mortgage.* A party applying for
insurance on property is not bound to disclose the existence of a mortgage
thereon which has been paid, or one which is invalid by reason of its exe-
cution having been obtained by fraud and circumvention.

6. SAME—*assured must have an insurable interest.* The principal thing
in an insurance is, that the assured has an insurable interest, and has
acted in good faith. Under a statement that he is the owner, he is only
bound to prove an insurable interest, which is such a title as, if there should
be a loss, without insurance, it would fall upon him. A mortgagor has such
an interest.

7. MORTGAGE—*when power of sale ceases.* A mortgagee's power to sell
only continues as long as the debt exists. When the debt is extinguished,
the power to sell ceases, and an attempt to exercise it is, therefore, *ultra
vires*, and transfers no title, unless the mortgagor so acts as to estop him
from showing the facts.

8. INSTRUCTIONS—*repeating.* The refusal of instructions not pertinent
to the issue, or, when proper, the principles announced by them have been
given in others, is not error.

APPEAL from the Superior Court of Cook county; the Hon.
JOSEPH E. GARY, Judge, presiding.

Mr. Lawrence Proudfoot, for the appellant.

Mr. Rufus King, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

A policy of insurance against fire was issued by appellant, on a building in Chicago, to appellee, on the 14th day of July, 1874, for the sum of $2100, loss, if any, payable to Philo Carpenter, as his interest may appear. The policy, by its terms, was to remain in force for one year from its date. The house was destroyed by fire during the life of the policy, and proofs of loss being made and presented to the company, they refused payment, and appellee sued on the policy. A trial was had before the court and a jury, resulting in a verdict in favor of plaintiff, and, after overruling a motion for a new trial, the court rendered a judgment on the verdict, and the company brings the case to this court by appeal.

It is first insisted that the verdict is excessive. After a careful examination, we fail to see that the amount found is larger than was warranted by the testimony. As is usual in such cases, the witnesses differed largely in their estimates of the value of the house. They placed it at from $1000 to $3000, but we are of opinion the evidence preponderates in favor of the finding.

Our reports are full of cases which hold that any person acquainted with property, and its value, or the value of like property, is a competent witness to prove its worth; and if competent, and he testifies, it is for the jury to estimate the value of his testimony as they do that of other witnesses. It is not our province to say that one witness is more worthy of belief than another, when they both seem to testify with equal fairness. That belongs to, and it is the duty of, the jury trying the cause, who see the manner of the witnesses on the stand. The evidence on this question is inharmonious, and it was for the jury to reconcile it; or if not able to do so, then to give weight to and act upon such as they believed to be

true. This they have found, and we are satisfied with the result they have reached.

It is next claimed that appellee was not the owner of the property insured, when the policy was procured. It is urged that false statements were made by the assured, in reference to the title.

On turning to the application, we find it is not signed by the assured, but by the letters " O. B., solicitor." Nor does it make any statement whatever as to her title. It simply states that " Insurance is wanted for Mrs. Jackson, in Lycoming Insurance Co.," etc., "on her two-story frame dwelling, situated," etc., "loss, if any, payable to Philo Carpenter, as his interest may appear." There is no misrepresentation in this application, and if there was, we fail to see how appellee could be affected by it, as she did not execute it, nor does it appear that she authorized it to be made, or ever ratified it after it was executed. The objection, then, can not be based on this paper. It is true, that the policy refers to the application, but it was not signed by her, or, so far as this record shows, she never authorized it be presented to the company. And if it be said she availed of it by receiving the policy issued on it, and thereby ratified it, there is no evidence that she was informed it had been made, or knew its contents; and, as a party to be bound by a ratification must be informed of all the material circumstances attending the act, in the absence of such knowledge, appellee could not be bound.

It can not be held, under this proof, that she ever made a written application for this policy. We presume, if an application had been made by her, that it would have been more full, formal and specific as to title, occupancy, and other details, than this. It would be unreasonable to treat this as her application, and then say that she had failed to disclose her title. It would be to substitute, so far as this record discloses, the unauthorized statement of some other person as her act, and then to hold that, because that other unauthorized person failed to state the true nature of her title, or to disclose other material facts, the policy of the company is void. We can

not hold that this is her application, and the reference to it in the policy does not make it a part of the policy; hence it can have no influence in the decision of the case.

The first clause or condition in the policy declares that, if an application, survey, plan or description of the property insured is referred to in the policy, it shall be a part of the contract, and a warranty by the assured, and any false representation by the assured as to the condition, etc., of the property, etc., or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in writing or otherwise, etc.; or if the interest of the assured in the property, whether as owner, etc., be not truly stated in the policy, then, and in every such case, the policy shall be void. This clause seems to be relied upon as avoiding the policy, and to defeat a recovery. But we have seen that appellee made no written application. Then how can it be said this clause has been violated? We are wholly unable to perceive.

The fourth clause states that, if the interest of the assured be any other than the entire, unconditional and sole ownership for the use or benefit of the assured, or if the building stands on leased ground, it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void.

Appellee testified that she stated to the agent of the company that the house stood on leased ground, and that Carpenter held a mortgage on the house, and the jury seem to have believed her statement; and that Carpenter's interest was disclosed, is manifest from the statement in the written part of the policy: "Loss, if any, payable to Philo Carpenter, as his interest may appear." The company would not have done so absurd a thing as to insert this clause, had they not been informed that Carpenter had an interest, and the presumption would be, even in the absence of appellee's testimony, from this clause, that the company were apprised of the nature and extent of his interest in the house at the time of issuing the policy.

If the company failed to state the fact in the policy that the

house was on leased land, it was from their negligence or to defeat the policy, as they were fully informed of the fact. They have no right to make appellee bear this loss for the failure to make the statement, whether from accident or design. It would be monstrous to hold that the company might make such an omission, whatever the purpose, deliver it to an illiterate and ignorant person, who relied upon the fairness and integrity of the agents of the company, to defeat the assured, because they failed, in good faith, to insert information fairly given. This would be to allow a premium for negligence or fraud. This view fully disposes of the objection that Carpenter had a mortgage on the house.

As to the Martin mortgage, which, it is urged, was not disclosed to the agent of the company, the court had found, by decree, facts which almost conclusively show that his first mortgage was paid, and ordered an account to be taken.

Appellee testified that the second mortgage to Martin was obtained by representing to her that it was an instrument for the payment of $50 or $60, and she signed it under that belief. She was illiterate, and unable to read, and thus easily imposed on by the unscrupulous and designing. If these representations were made, and the mortgage thus obtained, then it was fraud and circumvention, and the jury, by their verdict, have so found. It then follows, that, if the first mortgage to Martin was paid, and the latter was obtained by fraud, he had no interest in the property to be disclosed. Hence, even if appellee had made a written application, or was bound, under a verbal one, to disclose all interests, she was not bound to refer to this fraudulent claim of Martin. Appellee had the undoubted right to show the claim was false and void, and that Martin's sale of the house was void for the want of power. A mortgagee's power to sell only continues as long as the debt survives. When the debt is extinguished, the power to sell ceases, and an attempt to exercise it, thereafter, is *ultra vires*, and transfers no title, unless the debtor so acts as to estop himself from showing the facts. This, then, disposes of this objection.

It can not be expected of courts to give so rigid a construction to the disclosure of the nature of the title held by assured, that the opinion of an eminent real estate lawyer would be necessary to be obtained before an application can be made with safety for the insurance of a house, and then have the insurance defeated if the attorney should be mistaken in his opinion.    These conditions must have a fair and reasonable construction.    Such policies seem to be burthened with such stringent conditions as to render all recoveries difficult.

The great central idea, around which all others cluster, is, has the assured an insurable interest, and has the assured acted in good faith?

Under the statement that appellee was the owner of the house, she was only bound to prove that she held an insurable interest, such a title as, if there should be a loss, and the property were not insured, the loss would fall upon her.    *Rockford Insurance Co.* v. *Nelson*, 65 Ill. 419.    If a party undertakes, in a survey or written application, to disclose the nature and extent of his title, it must, no doubt, be truly done according to the general understanding in reference to titles, but he is not required to be accurate as to nice questions, which perplex the ablest lawyers, and on which courts may differ.    To hold otherwise, would enable insurance companies to receive money without risk of loss, under the pretense that they were insuring the party against loss.    We must presume that the one party expects to be indemnified, and the other to pay the loss if the property shall be destroyed.    And when the assured has paid his money, and in all things acted in good faith, and the insurer, by his incompetent or reckless agents, has prepared the application or survey, so as not to speak the truth, or so as to omit important information, the company should not be heard to urge the courts to make refined and almost impalpable distinctions, to release them from their obligations, and permit them to hold the premiums that the assured believed and was encouraged and induced by the company to believe would protect him from loss.

That appellee had an insurable interest, is shown by refer-

ring to our reports and all works on insurance law. We believe no court has ever questioned that a mortgagor has an insurable interest. Appellee had such an interest and is entitled to the protection which the law extends to persons thus situated.

It is urged that appellee overestimated the value of the property insured. We fail to see, even if she made any representation of the value of the property, that it was false. The jury have found that there was no fraud in the representation, if one was made, and we are satisfied with the finding. All the evidence considered, we regard it as abundantly sufficient to sustain the finding of the jury.

Nor do we see that the evidence which was rejected on the cross-examination of appellee was in anywise material, as the whole transaction was shown by the evidence. And she explained, in other portions of her evidence, how she came to execute the Martin mortgage. We perceive no error in receiving or rejecting evidence on the trial.

It is claimed that the court below erred in giving plaintiff's instruction. It is urged that, by it, the court left the question of the validity of Martin's mortgage to be determined by the jury, without informing them what would render it invalid. The ground upon which it was claimed to be void was, that it was obtained by fraud and circumvention. It was to that point that evidence was directed on the trial. When the mortgage was read in evidence, the jury, if of ordinary intelligence, knew that it was to defeat a recovery on the ground of fraudulent representations. And when the evidence of fraud and circumvention was introduced, they could not but know such evidence was intended to show the mortgage was itself void and of no effect, and the instruction, although not technically correct, could not, we think, have misled the jury. It is believed that but few persons of ordinary intelligence could be found who do not know that such fraud and circumvention renders an instrument void.

We perceive no error in refusing appellant's instructions. They, under the views here expressed, were not pertinent to

the issue, or if some of the announcements they contain were proper, they were, in substance, given in others which were given for appellant. The instructions, as given, presented, we think, the law of the case fairly to the jury.

We perceive no error in this record which should reverse the judgment of the court below, and it must be affirmed.

