JUDGMENT ACCORDINGLY.

---

HANOVER FIRE INSURANCE COMPANY ET AL. V. WILLIAM G. BOHN ET AL.

FILED JUNE 2, 1896.   No. 6687.

1. **Insurance: CONSTRUCTION OF MORTGAGE CLAUSE.** To a fire insurance policy was attached a "mortgage clause" making the loss payable to a named mortgagee of the insured property, and providing that the insurance should not be invalidated by any act or neglect of the mortgagor or owner of the insured property. *Held*, (1) That the "mortgage clause" was an independent contract between the insurance company and the mortgagee; (2) that no act or omission of the mortgagor, whether the same occurred at the time of the issuance of the policy or prior or subsequent thereto, invalidated said insurance policy.

2. ———: RIGHTS OF MORTGAGEE. A mortgagee of real estate has an insurable interest therein, which he may insure on his own account, and when he does so he insures not the real estate, but his interest therein arising from his lien.

3. ———: EFFECT OF INCUMBRANCE: FAILURE TO DISCLOSE TITLE. Where an application for fire insurance is oral, and no inquiries are made by the agent of the insurer as to the condition of the title to the property, and the insured says nothing about the ex-

istence of a mortgage thereon, but does not keep silent from any sinister motive or with the intention to deceive or mislead the insurer, then the fact that there exists a mortgage upon the insured property will not invalidate the policy of insurance, notwithstanding that it provides that it should be void if there existed any incumbrance by mortgage or otherwise against the insured property. (*Insurance Co. of North America v. Bachler*, 44 Neb., 549.)

4. Insurable Interest. One who has no title, legal or equitable, in property and no present possession or right of possession therein, yet has an insurable interest therein, if he will derive benefit from its continued existence or suffer loss by its destruction.

5. ———. One who mortgages his real estate to secure the payment of a debt for which he is personally responsible and subsequently conveys the title of such real estate to another subject to said mortgage, has an insurable interest remaining in said real estate.

6. Insurance: CONDITION OF TITLE: INSURED INTEREST IN PROPERTY. When an insurance company issues its policy and accepts and retains the premium without requiring an application by the insured and without making inquiry as to the condition of the property or state of its title, and the insured has in fact an insurable interest, the company will be conclusively presumed to have insured such interest and to have waived all provisions in the policy providing for its forfeiture by reason of any facts or circumstances affecting the condition or title of the property in regard to which no such statement was required or inquiry made. (*German Insurance & Savings Institution v. Kline*, 44 Neb., 395.)

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*Thomas D. Crane*, for plaintiffs in error.

*B. G. Burbank, Charles Offutt*, and *James B. Meikle*, contra.

RAGAN, C.

September 1, 1888, William G. and Conrad Bohn were the owners in fee-simple of a lot in the city of Omaha on which was situated a three-story building. On that date they were indebted to the National Life Insurance Company of Montpelier, Vermont, hereinafter called the "Life Insurance Company," in the sum of $25,000, and to secure

said indebtedness they executed to said Life Insurance Company a mortgage upon said real estate. The mortgage required the said Bohns to keep said property insured during the existence of said mortgage against loss or damage by fire for the benefit of said Life Insurance Company or its assignee. On the said 1st day of September, 1888, the Hanover Fire Insurance Company and another, hereinafter called the "Fire Insurance Companies," issued and delivered their joint fire insurance policy to the Bohns, insuring said property in the sum of $5,000 against loss or damage by fire for one year, or until September 1, 1889. This policy had attached thereto a "mortgage clause" making the loss, if any, payable to the Life Insurance Company or its assignee. At the date of the issuance of this policy the legal title to said real estate was unincumbered except by the mortgage held by the Life Insurance Company. On the 1st day of September, 1889, the policy issued by the Fire Insurance Companies expired and was by them renewed for another year. The renewal expired on September 1, 1890, and was by the Fire Insurance Companies renewed for still another year, or until September 1, 1891. On the 12th day of March, 1891, the property was wholly destroyed by fire. In the district court of Douglas county the Life Insurance Company and the Bohns sued the Fire Insurance Companies to recover the amount of loss and damage to said insured property. At the date of the trial of the action there remained due to the Life Insurance Company from the Bohns on the latter's mortgage debt about $20,000. The Life Insurance Company and the Bohns had a verdict and judgment and the Fire Insurance Companies have brought the case here for review.

1. The alleged errors relied on for a reversal of this judgment may all be considered under the proposition whether under the proved and admitted facts the judgment is contrary to the law of the case. Prior to the date of the issuance of the policy in suit the Bohns sold and conveyed the real estate on which was situate the

insured building subject to the mortgage held by the
Life Insurance Company. The policy provided: "If the
interest of the assured in the property be untruly stated
therein, or if the interest of the assured be other than the
entire unconditional and sole ownership of the property,
or if the property be incumbered by any other lien, mort-
gage or otherwise, or if the subject of insurance be a
building on ground not owned by the assured in fee-
simple, then and in every such case this policy shall be
void." It is now insisted by the Fire Insurance Com-
panies that since the Bohns were not the owners of the
real estate on which the insured building was situate on
the date of the issuance of the policy in suit, said policy
has never had any force or validity whatever, and that,
therefore, the judgment in favor of the Life Insurance
Company cannot stand. At the time of the issuance of
the policy in suit the Fire Insurance Companies attached
to said insurance policy an agreement in writing called
a "mortgage clause." It was provided in this "mort-
gage clause" that the loss, if any, should be payable
to the Life Insurance Company; and it was further pro-
vided: "It is agreed that this insurance as to the in-
terest of the above named mortgagee or beneficiary, or
its assignee, only shall not be invalidated by any act or
neglect of the mortgagor or owner of the property in-
sured." But what was the effect of this "mortgage
clause" attached to this policy? We think that by this
"mortgage clause" the Fire Insurance Companies entered
into a contract with the Life Insurance Company in and
by which they insured its interest as mortgagee in the
insured property against loss or damage by fire to the
extent of $5,000 for one year from September 1, 1890.
The right of the Life Insurance Company to enforce the
policy does not depend upon whether the Bohns have
kept their engagements with the Fire Insurance Com-
panies. By express provision of the "mortgage clause"
attached to the policy no act or omission of the mort-
gagors or owners was to invalidate the insurance so far

as the Life Insurance Company or its assignee was concerned; and this was true whether said act or omission of the mortgagor or owner occurred at the date of the issuance of the policy prior or subsequent thereto.    In other words, it comes to this: that by the provision of the "mortgage clause" the Fire Insurance Companies insured the interest of the Life Insurance Company in the mortgaged property.    The contract of insurance was made with the Life Insurance Company or with the Bohns for their benefit, and it is immaterial whether the Life Insurance Company itself paid the premium or whether the Bohns paid it, and it was clearly the intention. of all the parties that the validity of the insurance of the Life Insurance Company should not depend upon anything which the Bohns or their grantees had done or omitted to do or might do or omit to do.

A question almost identical with the one under consideration was before this court in *Phenix Ins. Co. of Brooklyn v. Omaha Loan & Trust Co.*, 41 Neb., 834.   The policy in that case provided that if the property should be sold or transferred without the written permission of the fire insurance company indorsed on the policy, then that the policy should become void.   There was attached to the policy a "mortgage clause" like the one in the case at bar.   Before the loss occurred the mortgagor sold and transferred the property, the consent of the fire insurance company thereto not having been obtained.   The insured property was destroyed by fire, and the mortgagee sued the fire insurance company for the amount of the loss. It was insisted by the fire insurance company that as the mortgagor had sold and conveyed the insured property prior to the loss, that at the date of the loss the policy was not in force; but the court held that the sale and conveyance of the mortgaged property by the mortgagor without the consent of the insurance company did not avoid the policy as against the mortgagee.   We have reexamined that case and the authorities therein cited, and are satisfied that the decision is correct, both upon prin-

ciple and authority, and we accordingly reaffirm it. Sustaining the doctrine announced in that case, see *Ellis v. Council Bluffs Ins. Co.*, 64 Ia., 507; *Ellis v. Ins. Co. of North America*, 32 Fed. Rep., 646; *National Bank of D. O. Mills & Co. v. Union Ins. Co. of San Francisco*, 26 Pac. Rep. [Cal.], 509.

The provision in the policy, that it should be void if the subject of the insurance was a building on ground not owned by the assured in fee-simple, was not one that was binding or intended to be binding on the Life Insurance Company, mortgagee. The Fire Insurance Companies must have known when they issued the policy in suit with the mortgage clause attached thereto that the Life Insurance Company did not own the fee-simple title of the real estate on which the insured building was situate. The Life Insurance Company was not attempting to insure a fee-simple interest in the mortgaged property, nor did the Fire Insurance Companies understand that the former was attempting to insure anything further than the interest it had in the property by virtue of its mortgage. All the authorities agree that a mortgagee of real estate has an insurable interest therein which he may insure on his own account, and when he effects such insurance he is insuring not the real estate, but insuring his interest or lien therein. The terms "interest" and "title" are not synonymous terms in insurance policies, and the provisions in the policy under consideration, that it should be void if the interest of the assured should be other than the entire unconditional and sole ownership of the property, meant and means, not that the Life Insurance Company should be the owner of the legal title to the real estate on which the insured building was situate, but that the interest which it insured, namely, its mortgage lien upon the property, should be and was an unconditional interest belonging to it, not a contingent or speculative one.

2. After September 1, 1888, and before the issuance of the policy in suit, without the knowledge or consent

of the Fire Insurance Companies, the Bohns placed two other mortgages upon the property mortgaged to the Life Insurance Company.   It is now insisted by the Fire Insurance Companies that this action of the Bohns invalidated the policy in suit, since it was provided by the policy that it should become void if the insured property should be incumbered by any lien or mortgage.   The jury made a special finding, and the evidence supports it, that in September, 1888, and in September, 1889 and 1890, when the policy of September, 1888, was renewed, no questions were asked by the Fire Insurance Companies or their agents as to incumbrances existing against the property of the Bohns, nor did the Bohns make any statement on the subject.   The record shows also, without contradiction, that the application for the insurance in the first instance, September 1, 1888, and for the subsequent renewals of the policy were oral; no written application was made to the Fire Insurance Companies for the insurance; and there is in the record no claim of any fraud practiced or attempted to be practiced by any one.   The neglect of the Bohns to notify the Fire Insurance Companies of the incumbrances on the property at the dates of the renewals thereof seems to have resulted from the Fire Insurance Companies' not inquiring about incumbrances, and the Bohns not having them in mind.   At all events it is not claimed that the Bohns, or either of them, were actuated by any sinister motives whatever in not disclosing to the Fire Insurance Companies the existence of these incumbrances in September, 1889 and 1890, when the policy was renewed.   Where an application for fire insurance is oral and no inquiries are made by the agent of the insurer as to the condition of the title to the property, and the insured says nothing about the existence of a mortgage thereon, but does not keep silent from any sinister motive or with the intention on his part to deceive or mislead the insurer, then the fact that when the policy was issued there existed a mortgage upon the insured property will not invalidate the policy, notwith-

standing the fact that the policy provides that it should be void if there existed an incumbrance, by mortgage or otherwise, against the insured property. (*Ins. Co. of North America v. Bachler*, 44 Neb., 549.)

3. But it is insisted that the policy sued upon was never in force because the Bohns at the date of its issuance were not the unconditional and sole owners of the insured property and that the insured building was not situated on ground to which the Bohns had a fee-simple title. This contention involves the assumption that the Bohns at the date of the issuance of the policy in suit had no insurable interest in the insured property. Is this contention correct? What is an insurable interest? In *German Ins. Co. of Freeport, Ill., v. Hyman*, 34 Neb., 704, POST, J., speaking to this question, said: "An interest, to be insurable, does not depend necessarily upon the ownership of the property. It may be a special or limited interest disconnected from any title, lien, or possession. If the holder of an interest in property will suffer loss by its destruction he may indemnify himself therefrom by a contract of insurance. If, by the loss, the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien arising thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest." To the same effect see *Merrett v. Farmers Ins. Co.*, 42 Ia., 11; *Rochester Loan & Banking Co. v. Liberty Ins. Co.*, 44 Neb., 537. In *Warren v. Davenport Fire Ins. Co.*, 31 Ia., 464, it was held: "The owner of stock in a corporation organized for pecuniary profit has, by reason of such ownership, an insurable interest in the corporate property." In *Williams v. Roger Williams Ins. Co.*, 107 Mass., 377, it was held that a mortgagee who had indorsed the note secured by his mortgage and become liable as an indorser on said note had an insurable interest in the mortgaged property. The court said: "It is now well established that even one who has no title, legal or equitable, in the property, and no present possession or right of possession thereof, yet has

an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction." In *Waring v. Loder*, 53 N. Y., 581, it was held that where one had mortgaged his real estate to secure his debt and afterwards conveyed the real estate he still had an insurable interest in the property. To the same effect see *Lycoming Fire Ins. Co. v. Jackson*, 83 Ill., 302; *Norwich Fire Ins. Co. v. Boomer*, 52 Ill., 442. In the case at bar, if we regard the contract of insurance made between the Bohns and the Fire Insurance Companies as having been made at the date of the issuance of the policy sued upon, we still think that they had an insurable interest in the insured property. They had sold the property subject to the mortgage thereon in favor of the Life Insurance Company, and they were personally and individually responsible for that mortgage debt. They would derive a benefit from the continued existence of the property and they would suffer loss by its destruction.

Was the policy in suit never in force because at the date of its issuance the Bohns were not the owners of the legal title to the real estate upon which were situated the insured building? It has already been stated that the Bohns owned the fee-simple title to this real estate when the policy was first issued, September, 1888; that the application for the insurance and the renewals of the insurance were oral; that no questions as to the title of the Bohns were ever propounded to them by the Fire Insurance Companies or their agents; that neither of the Bohns ever made any representations to the Fire Insurance Companies as to what title they had or held; that the Bohns were not actuated by any sinister motives whatever in not disclosing the nature of the interest they had in the insured property; that no fraud was attempted by any one, and that the failure of the Bohns in September, 1890, to disclose the exact nature of their interest in the insured property resulted either from their not thinking about it, or from the failure of the Fire In-

surance Companies to inquire about that interest. Under
these facts we think the policy, notwithstanding its pro-
visions, was in force even in favor of the Bohns at the
time the loss sued for occurred. In *Hall v. Niagara Fire
Ins. Co.*, 53 N. W. Rep. [Mich.], 727, a fire insurance policy
contained a provision that it was void if the assured was
not the sole and unconditional owner of the property, or
if the insured building stood on ground not owned in fee-
simple by the assured. The application for insurance in
that case was oral, and no statement was made by the as-
sured as to the condition or nature of his title. The
supreme court of Michigan held, in construing the policy,
that the provision quoted above applied only to such
changes of title as arose after the execution of the policy,
and not to the condition of the title of the property at
the time the policy was issued. In *Norwich Fire Ins. Co.
v. Boomer*, 52 Ill., 442, it was held that upon an applica-
tion for insurance the party applying is bound to dis-
close the facts material to the risk, but in the absence of
a requirement on the subject in the policy, or of any in-
quiry in respect thereto, it is not essential that he should
disclose the nature of his interest in the property sought
to be insured. It is sufficient if he have an insurable in-
terest. And in *Lycoming Fire Ins. Co. v. Jackson*, 83 Ill.,
302, it was held: "The principal thing in an insurance is,
that the assured has an insurable interest, and has acted
in good faith. Under a statement that he is the owner,
he is only bound to prove an insurable interest, which is
such a title as, if there would be a loss without insurance,
it would fall upon him. A mortgagor has such an inter-
est." In *Philadelphia Tool Co. v. British-American Assur-
ance Co.*, 19 Atl. Rep. [Pa.], 77, the policy provided: "If
the assured is not the sole and unconditional owner of
the property, or if the building stood on ground not
owned in fee-simple by the assured, * * * then the
policy shall be void." The assured had only a lease from
year to year on the land upon which the insured building
stood. The supreme court of Pennsylvania, in constru-

ing the policy, said: "A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it. This policy was issued without any application or written request describing the interest of the assured in the building. No actual representation of any sort upon the subject, oral or written, is alleged to have been made by or on behalf of the assured. We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer and intended to cover in good faith the interest which the insured had in the buildings. Fraud is never to be presumed, and in this case no fraudulent representation is shown or alleged.   *   *   *   We conclude that the policy   *   *   *   was intended to cover such interest in the buildings as the insurer had. This was a leasehold only, but it was an insurable interest. Presumably it is the interest which an application, if one had been made, would have shown, for it is the only interest which the tool company ever had or claimed to have. To such an interest the proviso whose protection is invoked is not applicable. The policy covering only the interest of the lessee, the ownership of the fee becomes immaterial." Finally, in *German Insurance & Savings Institution v. Kline*, 44 Neb., 395, it was held by this court: "When an insurance company issues its policy and accepts and retains the premium without requiring an application by the insured, and without making inquiry as to the condition of the property or the state of its title, and the insured has in fact an insurable interest, the company will be conclusively presumed to have insured such interest and to have waived all provisions in the policy providing for its forfeiture by reason of any facts or circumstances affecting the condition or title of the property in regard to which no such statement was required or inquiry made." This case is decisive against the plaintiff in error of the contention under consideration.

4. As already stated, the loss sued for in this action

occurred on the 12th of March, 1891. Within a day or two thereafter the Fire Insurance Companies discovered that the Bohns were not the owners in fee-simple of the real estate on which the insured building stood in September, 1890, nor had they been since that time. The Fire Insurance Companies, however, did not then cancel, or attempt to cancel, the policy in suit or declare it forfeited; on the contrary they demanded and were furnished proofs of loss; demanded that the insured should submit to arbitration and an appraisement of the damages sustained; and not until the case came on for trial in November, 1892, did the Fire Insurance Companies make any attempt to declare a forfeiture of the policy in suit. The jury made a special finding, and the evidence supports it, that the Fire Insurance Companies, with full knowledge of the fact as to the true condition of the title of the insured property, retained the premiums received by them from the Bohns and neglected for an unreasonable length of time to insist on the forfeiture of the policy, and by other acts had recognized and treated the policy as a valid, subsisting contract between them and the Bohns and had induced the Bohns to act in that belief. We think that the Fire Insurance Companies by their conduct in the premises waived their right to insist upon a forfeiture of the insurance policy in suit. A forfeiture in the policy of insurance may be waived where the insurer is fully cognizant of the facts out of which a forfeiture is claimed and treats and continues to treat the contract as binding and induces the insurer to act in that belief. (*Billings v. German Ins. Co.*, 34 Neb., 502, and cases there cited.)

Counsel for plaintiff in error indulges in certain criticisms upon some of the instructions of the trial court, but these call for no special notice. The judgment of the district court is right and is in all things

AFFIRMED.