MANCHESTER FIRE ASSUR. CO. v. ABRAMS.

(Circuit Court of Appeals, Ninth Circuit. October 24, 1898.)

No. 442.

1. FIRE INSURANCE—UNCONDITIONAL OWNERSHIP.
   One has "unconditional ownership" of a crop of hay raised on his land within the conditions of a policy stipulating that it shall be void if the interest of the insured is other than "unconditional and sole ownership," when the only restriction upon his absolute right is that any excess of one-third of the proceeds over expenses should go to the person making the crop.
   Ross, Circuit Judge, dissenting.

2. SAME—REPRESENTATIONS.
   The assured does not make a representation as to his interest by merely accepting a policy which contains the stipulation that it shall be void if assured's ownership is not sole and unconditional.

3. SAME—APPLICATION.
   One stating that he is the owner is bound to show only an insurable interest, if he makes no actual misrepresentation or concealment of his interest.

In Error to the Circuit Court of the United States for the District of Washington.

On February 12, 1894, the defendant in error, Robert Abrams, entered into a contract with one E. E. Bulson, by the terms whereof the said Bulson was to take possession of the farm of the defendant in error for a period of two years, the defendant in error to furnish all seed, teams, farming utensils, and the labor of one man, and the said Bulson to pay for all the other labor necessary for putting in, harvesting, and threshing the crops, and for all other labor performed on the farm, and certain other expenses, in consideration whereof he was to receive one-third of all the crops raised on the premises, and one-third of the increase of the stock. In 1895, Bulson, having exhausted his means, became unable to perform his part of the agree-

ment. A new and verbal agreement was then entered into, by the terms whereof the defendant in error was to pay all the men and all the expenses of operating the farm, and was to have the possession of the crops, and sell the same, and was to charge Bulson with the expenses so assumed, and was to credit him with the proceeds of one-third of the crop. What Bulson was to receive is succinctly expressed in the following question and answer: "Q. What was he to receive out of the crop, if anything? A. He was to receive one-third of what was left; if there was anything left." The same arrangement was, by agreement, subsequently extended over the year 1896. In pursuance of this verbal contract, the defendant in error went upon the premises with his sons, to assist in the harvesting and haying, employed a large number of men, and furnished all the supplies required for conducting the farm. Having advanced, as he believed, an amount which exceeded the value of one-third of the crop, he took out insurance on 600 tons of the hay which had been made under the agreement, and which had been stored in a barn. He made an oral application for insurance to the agents of the plaintiff in error, and truly answered all questions which they asked him. No question was asked concerning his title to the property. On August 19, 1896, the policy was issued and delivered to the defendant in error, insuring the hay against loss by fire in the amount of $2,500. On October 10, 1896, the barn and its contents were destroyed by fire. The loss of the hay was adjusted at the sum of $2,412. The policy contained the usual stipulation in regard to the ownership of the property by the insured, as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if * * * the interest of the assured be other than unconditional and sole ownership." To the action brought by the defendant in error to recover upon the policy, the insurance company made three defenses: First. That the policy was void because the interest of the insured in the property was other than that of unconditional and sole ownership. Second. That, in making his proofs of loss, the insured had made oath that the hay belonged exclusively to him, and that no other person had any interest therein, and that thereby he avoided the policy by violating the condition following: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss." Third. That, as the insured was the owner of only an undivided two-thirds of the hay, his loss was only two-thirds of the value thereof.

Harold Preston, E. M. Carr, and L. C. Gilman, for plaintiff in error.

H. G. Struve, John B. Allen, E. C. Hughes, and Maurice Mc-Micken, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The assignments of error principally relied upon by the plaintiff in error are: That the court erred in instructing the jury as follows:

"Further than that, I will say that a man is the sole owner of property when he has it in his possession, and has an unconditional right to the possession of it, and the unconditional right to sell and dispose of it for his own benefit, and to appropriate and retain the entire proceeds of the sale of it, if he sees fit to sell it. When the conditions are such that he has got the property, and got a right to sell it, and to take the money, and appropriate it to his own use, then it is his entirely and unconditionally."

—And that the court erred in refusing to give the following instruction, which was requested by the plaintiff in error:

"There has been introduced in evidence before you a certain contract between the plaintiff and one Bulson, under which the hay, the subject of the insurance, was produced; and I charge you that, under the terms of this contract, the hay, when harvested, became and was the joint property of Abrams and Bulson, Abrams owning an undivided two-thirds, and Bulson owning an undivided one-third, thereof, and that under said contract the interest of the plaintiff, Abrams, in said hay was not that of unconditional and sole ownership."

Upon the evidence disclosed in the record, we do not think that the circuit court erred in ruling that the interest of the defendant in error in the property insured was, at the time of the insurance and the loss, not less than unconditional and sole ownership. The hay had been produced upon his farm at his expense, by the labor of himself and his sons, assisted by Bulson. He had the possession of all the hay, and the right to sell and dispose of the same in any way in which he might see fit, without the consent of Bulson, and to apply the proceeds to his own use. The only restriction upon his absolute right to the proceeds was that, in case one-third of the amount realized upon a sale of the hay should be more than sufficient to reimburse him for his outlay and expenses, the residue of that third was to go to Bulson. The interest of Bulson was a contingent one only. He was in the attitude of any laborer who should undertake to work on a farm under an agreement that, in case the farm products to which his labor contributed should be sold for more than a certain figure, he should receive the overplus for his wages. In such a case the laborer has no title to any portion of the crop which is produced. He is a laborer for hire, whose wages are contingent upon the amount to be realized upon sale of the property. When the property is sold, and it appears that, out of the moneys received therefor, a certain sum is due him, his employer becomes his debtor to that amount. It is not disputed in the testimony that the advances made by the defendant in error in pursuance of his oral agreement with Bulson very considerably exceeded the value of one-third of all the crops. This was true, not only at the time when the policy was taken out, but continuously thereafter.

But if, upon any construction of the evidence, it can be said that the defendant in error was not stricti juris the owner of the hay, it, nevertheless, clearly appears that substantially and in contemplation of the law, as interpreted by the decisions of the courts, he was the owner, and, as such, entitled to insure the property as his own. It has been uniformly held, notwithstanding the stipulation that the policy shall be void if the interest of the insured be less than that of a fee-simple title to the land whereon the insured property is situated, that the stipulation is complied with if it appear that the insured is substantially or equitably the owner of the property, and entitled to the benefits of the same, although the title may be in another, and the insured may hold the property upon a bond for a deed only, or upon a contract for a conveyance upon which only a portion of the purchase price has been paid.

Baker v. Insurance Co. (Or.) 48 Pac. 699; Hall v. Insurance Co. (Mich.) 53 N. W. 727; Hough v. Insurance Co., 29 Conn. 10; Insurance Co., v. Dyches, 56 Tex. 573; Insurance Co. v. Erb, 112 Pa. St. 149, 4 Atl. 8; Insurance Co. v. Staats, 102 Pa. St. 529; Insurance Co. v. Dunham, 117 Pa. St. 460, 12 Atl. 668; Dooly v. Insurance Co., 16 Wash. 155, 47 Pac. 507; Loventhal v. Insurance Co. (Ala.) 20 South. 419; Insurance Co. v. May (Tex. Civ. App.) 35 S. W. 829; Haider v. Insurance Co. (Minn.) 70 N. W. 805; Insurance Co. v. Brady (Tex. Civ. App.) 41 S. W. 513; Carey v. Insurance Co. (Pa.) 33 Atl. 185. In the case last cited, it was held that a policy providing that the insured shall be the sole and unconditional owner of the property is not void, although the insured had not paid all the purchase money, had not obtained a deed, and had bought under a contract providing that failure to make payments when due should work a forfeiture of all rights thereunder. In Insurance Co. v. Brady, supra, it was held that there was no breach of a similar warranty from the fact that the husband had insured, as his own, furniture which belonged to his wife before their marriage, since, under the law of the state of his residence, the husband "has the sole management and control of his wife's separate property." In Insurance Co. v. May, supra, the insured was in possession of land on which she had erected improvements under a verbal contract with the owner to convey the same to her in fee simple upon payment of the price. It was held that she was the unconditional owner of the property within the condition of a policy of insurance providing that the policy should be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple.

Said the supreme court of Pennsylvania, in Yost v. McKee, 36 Atl. 317:

"The conditions of the policy are to be understood, not in their technical sense, but as requiring that the insured be the actual and substantial owner."

The cases of Noyes v. Insurance Co., 54 N. Y. 668, and Insurance Co. v. Pacaud, 150 Ill. 245, 37 N. E. 460, were very similar in their facts to the case at bar. In the Noyes Case the plaintiffs had made an agreement with one Flournoy to operate a cotton plantation belonging to the latter. They were to furnish supplies and stock to the amount of $10,000, and certain implements, if needed. Flournoy was to supervise the work on the plantation. The cotton crop was to be delivered to the plaintiffs at the river banks, to be transported to market, and sold. The proceeds were to go, first, to reimburse the plaintiffs for their advances; the balance was to be divided equally between them and Flournoy. The cotton was insured by the plaintiffs. The policy contained the condition that, if the insured was not the sole and unconditional owner of the cotton, the policy should be void. A portion of the insured property was consumed by fire. It was held that, as the plaintiffs had expended more than the whole crop was worth, Flournoy had no interest therein, within the spirit and meaning of the policy,

and that the plaintiffs "were the sole and unconditional owners, and entitled to recover the loss."

In the Pacaud Case it appeared that the plaintiffs had advanced money to the firm of Million & Bott to purchase grain, and that they held warehouse receipts of the firm for their advances. Insurance was obtained upon the grain as the property of J. H. Million, with the loss payable to the plaintiffs. The policy contained the condition that, if the interest of the assured be other than sole ownership, the policy should be void. The insurance company contended that the policy was void, for the reason that the property was owned by the firm of Million & Bott, and not by J. H. Million. It appeared that, while the grain business was carried on in the name of the firm, Bott had the charge of the business at the elevator. His interest in the firm was confined to one-half of the proceeds to be realized from the business. The court said:

"Under this arrangement, Bott cannot be regarded as a real owner of the title to one-half of the grain in the elevator at the time the policy issued. His liability with Million to Pacaud & Company to hold and ship the grain to them or their order, as provided in the warehouse receipts, and his right to share in the profits on payment of his salary, may be regarded as an insurable interest in the property, upon which he could take out a policy for his own benefit. His interest in the property itself was not one which the plaintiffs were required to disclose when they took out a policy to protect their own interest."

It is earnestly contended by the plaintiff in error that the assured, by accepting a policy of insurance containing the stipulation that the same shall be void if the ownership of the assured is not unconditional and sole, has falsely represented to the insurance company that his ownership is sole and unconditional. In the present case we have found that the assured was the sole and unconditional owner of the insured property, not only in fact, but in the sense in which these words have been interpreted by the decisions. But if it were conceded that he was not such owner, and that Bulson owned one-third of the hay, we are still of the opinion that the policy would not thereby be avoided. The position contended for by the plaintiff in error, it is true, is not without the support of high authority. Insurance Co. v. Bohn, 12 C. C. A. 531, 65 Fed. 165; Mers v. Insurance Co., 68 Mo. 132; Insurance Co. v. Boulden (Ala.) 11 South. 771; Collins v. Insurance Co. (Minn.) 46 N. W. 906; Weed v. Insurance Co., 116 N. Y. 106, 22 N. E. 229. But sound reason as well as the weight of authority inclines us to the view that where the assured has an insurable interest in the property, and in good faith applies for insurance upon the same, and makes no actual misrepresentation or concealment of his interest therein, and the insurance company refrains from making inquiry concerning his interest, and issues a policy to him, and accepts and retains his premium, the company must be presumed to have knowledge of the condition of his title, and to assure the property with such knowledge. Insurance Co. v. Bohn (Neb.) 67 N. W. 774; Philadelphia Tool Co. v. British American Assur. Co. (Pa. Sup.) 19 Atl. 77; Miotke v. Insurance Co. (Mich.) 71 N. W. 463; Yost v. McKee (Pa. Sup.) 36 Atl. 317; Insurance Co. v. Jackson, 83 Ill. 302; Hall v. Insurance Co. (Mich.) 53 N. W. 727;

Savings Institution v. Kline (Neb.) 62 N. W. 857. Said the court in the case last cited:

"The real contract of insurance is made before the policy is written, and the insured, by accepting the policy with such a condition as the one relied upon, cannot be deemed to have represented his title to be in fee simple, or not by leasehold. How can it be said that, under such circumstances, there has been either fraud or misrepresentation or concealment on the part of the insured? He has represented nothing. He has not been asked to represent anything."

Said the court in Insurance Co. v. Jackson, 83 Ill. 302:

"The principal thing in an insurance is that the insured has an insurable interest, and has acted in good faith. Under a statement that he is the owner, he is only bound to prove an insurable interest, which is such a title as, if there should be a loss without insurance, it would fall upon him."

In Philadelphia Tool Co. v. British American Assur. Co., supra, it was said:

"This policy was issued without any application or written request describing the interest of the assured in the building. No actual representation of any sort upon the subject, oral or written, is alleged to have been made by or on behalf of the assured. We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer, and was intended to cover, in good faith, the interest which the insured had in the buildings. Fraud is never to be presumed."

In Miotke v. Insurance Co., supra, the court said:

"The day has gone by in Michigan for successfully contending that the mere acceptance of a policy containing a condition like this makes it conclusive against the holder who accepts it in ignorance of the clause, and whose title does not conform to the strict letter of the condition."

In the case at bar there can be no question that the defendant in error insured the property in good faith as his own. He was asked no questions concerning his title. The condition in the policy which it is claimed renders it void was one of the numerous printed conditions which the policy contained when it was delivered to him. The law does not favor forfeiture. The contract issued and prepared by the insurance company is made for its own protection, and must be construed most strongly against it. In any view which may be taken of the interest which the defendant in error had in the insured property, it cannot be denied that he was entitled to receive the total proceeds of the hay in case it was sold, and the total amount of the protection which was afforded by the policy. He withheld no material fact from the insurer, and it cannot be said that the latter has been in any way prejudiced from want of knowledge of the facts concerning his title. We think the plaintiff in error cannot now be heard to dispute its liability under the insurance contract. The judgment will be affirmed.

ROSS, Circuit Judge. I dissent. The action was upon a policy of fire insurance issued by the plaintiff in error to the defendant in error on the 19th day of August, 1896, whereby it insured the defendant in error, in accordance with the terms and conditions of the policy, for a period of one year, against all direct loss or damage by fire, to an amount not exceeding $2,500, "on his 600 tons of

hay" then being in a barn upon the farm of the defendant in error
in Skagit county, state of Washington. The barn and its contents
were destroyed by fire on the 10th day of October, 1896. The value
of the hay so insured and destroyed was ascertained by agreement
between the assured and the plaintiff in error to be the sum of $2,412.
The case was tried by the court below with a jury, which returned
a verdict for the plaintiff in the action, upon which judgment was
entered against the insurance company for the sum of $2,579.45.
The case is brought here by the company by writ of error.

The policy contains this stipulation with respect to the ownership
of the property insured:

"This entire policy, unless otherwise provided by agreement indorsed here-
on or added hereto, shall be void * * * if the interest of the insured be
other than unconditional and sole ownership."

It was not otherwise so provided.

The policy also contains this clause:

"This entire policy shall be void if the insured has concealed or misrepre-
sented, in writing or otherwise, any material fact or circumstance concern-
ing this insurance or the subject thereof, or if the interest of the insured in
the property be not truly stated therein, or in case of any fraud or false
swearing by the insured touching any matter relating to this insurance or
the subject thereof, whether before or after loss."

The company, by its answer, set up three defenses to the action:
(1) That the policy is void by reason of the fact that the interest of
the insured in the property was other than that of unconditional
and sole ownership; (2) that the insured, in making his proofs of
loss, made oath that the hay belonged exclusively to him, and that no
other person or persons had any interest therein, and that this action
on the part of the insured avoided the policy by reason of the second
condition above quoted; (3) that the loss sustained by the defendant
in error was only two-thirds of the value of the hay destroyed.

From what has been said it will be seen that the case in the court
below turned upon the question of ownership of the hay. There was
no substantial conflict in the evidence. The defendant in error was
the owner of a farm in Skagit county, Wash., and on the 12th day of
February, 1894, entered into a written contract with one E. E. Bulson
for its cultivation during a period of two years. In effect, it pro-
vided that the owner of the farm was to furnish seed, teams, and farm-
ing implements, and the labor of one man, and that Bulson was to
furnish all other labor, and pay the running expenses of the house,
one-half the wire for baling hay, one-half the sacks for sacking grain,
and one-half of the outside expenses for breakages; that, of all of the
products of the farm except butter, the owner was to have two-thirds,
and Bulson one-third, and all of the butter was to go to Bulson. The
contract, by its terms, expired February 12, 1896. It is claimed on
behalf of the defendant in error that, during the year 1895, Bulson, by
reason of floods and other misfortunes, was without means to perform
his part of the contract, and that, in consequence thereof, an oral
agreement was entered into between the parties to the effect that the
defendant in error should advance the necessary money required by
Bulson for the performance of his part of the written contract, and

charge it to Bulson's account; that the crop when raised should be
turned over to the defendant in error for sale; that he should sell the
same, keep two-thirds of the proceeds himself, and apply the remain-
ing one-third on Bulson's indebtedness to him for the advances made
under the oral contract, rendering to Bulson the surplus, if any; that
the farming operations of 1895 were carried on between Bulson and
the defendant in error under the written contract of 1894, as thus
modified by the oral agreement of 1895. On June 24, 1896, Bulson
and the defendant in error indorsed upon the written contract of 1894,
and executed, the following:

"It is hereby agreed between the parties to the within lease that the term
of said lease, and each and every of the provisions thereof, are continued in
force for the period of one year from the above-named lease, namely, Feb-
ruary 12, 1894. Witness our hands, this 24th day of June, 1896.
　　"[Signed]　　　　　　　　　　　　　　　　　　　　E. E. Bulson.
　　　　　　　　　　　　　　　　　　　　　　　　　　"Robert Abrams.

"Witness:
　　"A. F. Anderson.
　　"W. Lisk."

This agreement of June 24, 1896, continuing in force the provi-
sions of the so-called "lease" of 1894 "for the period of one year
from the above-named lease, namely, February 12, 1894," is unin-
telligible. But it appears from the testimony of the defendant
in error—and there is nothing to the contrary in the record—that
the crop of 1896, constituting the hay that was insured and de-
stroyed, was grown by Bulson on the farm of the defendant in
error under the same agreement as was the crop of 1895. That
crops grown and harvested under such a cropping contract are,
until divided, owned by the respective parties as tenants in com-
mon, is well settled. Bernal v. Hovious, 17 Cal. 542; Knox v.
Marshall, 19 Cal. 617; Walls v. Preston, 25 Cal. 60; Taylor v. Brad-
ley, 39 N. Y. 129; Dixon v. Niccolls, 39 Ill. 372; Wentworth v.
Railroad Co., 55 N. H. 540; State v. Jewell, 34 N. J. Law, 259;
Fiquet v. Allison, 12 Mich. 328; Delaney v. Root, 99 Mass. 546.

The oral modification of the written contract of 1894, by which
the defendant in error agreed to advance to Bulson the money
necessary to enable him to carry out his part of that agreement,
upon the condition that the whole crop should be delivered to the
defendant in error, to be by him sold, with the right on the part
of the latter to deduct from Bulson's one-third part of the proceeds
the amount of such advances, by no means devested Bulson of all
interest in the hay. He remained the owner of one-third thereof,
subject to the right of possession in the defendant in error of the
whole of it, together with the right on his part to sell the whole,
and appropriate so much of Bulson's share of the proceeds as
should prove to be necessary to make good the advances made on
his account. That was the condition of the ownership of the hay at
the time the insurance in question was applied for and effected.
The hay had not then been sold, and it could not therefore be then
known that Bulson's one-third of the proceeds of its sale would not
more than repay the few hundred dollars that the defendant in
error had advanced on his account.

I find it impossible to sustain the view, contended for on behalf of the defendant in error, and by the court below conveyed in one of its instructions to the jury, that he was the sole and unconditional owner of the hay. Bulson never sold his interest therein, or any part thereof, to the defendant in error. He consented that the latter should, for his security, receive the hay into his exclusive possession, should sell it, and handle the proceeds; but this agreement fell far short of devesting the entire interest of Bulson. With the burning of the hay, the security of the defendant in error for the advances he had made on account of Bulson disappeared; but not so Bulson's obligation to repay those advances. That debt remained, and is asserted by the defendant in error in his testimony in this case. The defendant in error lost his security, but he did not sustain the entire loss, for Bulson also lost his interest by the destruction of the property. He still owes the amount of the advances. Suppose he had paid those advances just before the fire occurred; would not the right of the defendant in error to appropriate any part of Bulson's one-third of the proceeds of the hay to his own use have thereupon ceased? Undoubtedly so; and, if so, we do not understand how it can be seriously contended that, when the policy in suit was applied for and issued, the defendant in error was the sole and unconditional owner of the hay.

"To be 'unconditional and sole,'" said the court of appeals of Maryland, "the interest must be completely vested in the assured, not divided or conditional, but of such a nature that the insured must sustain the entire loss if the property is destroyed; and this is so whether the title is legal or equitable." Insurance Co. v. Keating, 38 Atl. 29, 31.

The policy in question was taken by the assured, as has been seen, upon "his 600 tons of hay," and provides, among other things, that if the assured be other than the entire, unconditional, and sole owner thereof, the policy shall be void and of no effect. The provision in question is common in such policies, is plain in its terms, and is inserted for good and substantial reasons.

"They rest," said the circuit court of appeals for the Eighth circuit, in Insurance Co. v. Bohn, 12 C. C. A. 536, 65 Fed. 170, "upon a sound policy of the business of insurance,—a policy founded in reason, and in accord with an enlightened public policy,—the policy of reducing the moral hazard to which the underwriter is exposed. 'Moral hazard,' in insurance, is but another name for a pecuniary interest in the insured to permit the property to burn. Statistics, experience, and observation all teach that the moral hazard is least when the pecuniary interest of the insured in the protection of the property against fire is greatest, and that the moral hazard is greatest when the insured may gain most by the burning of the property."

In Insurance Co. v. Lawrence, 2 Pet. 25, 49, Chief Justice Marshall, speaking for the supreme court, said:

"The contract for insurance is one in which the underwriters generally act on the representation of the assured, and that representation ought consequently to be fair, and to omit nothing which it is material for the underwriters to know. * * * Generally speaking, insurances against fire are made in the confidence that the assured will use all the precautions to avoid the calamity insured against which would be suggested by his interest. The extent of this interest must always influence the underwriter in taking

or rejecting the risk, and in estimating the premium.   So far as it may influence him in these respects, it ought to be communicated to him.   Underwriters do not rely so much upon the principles as on the interest of the assured; and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding the property from loss."

In the present case, as has been shown, the assured only owned an undivided two-thirds of the hay; the other undivided one-third being owned by Bulson, subject to Abrams' right of possession of the whole, and his right to sell the whole, and repay his advances out of Bulson's share of the proceeds.   Bulson's interest might or might not have greatly exceeded those advances; but his interest existed and was, according to the record, insured by Bulson in another company.   There can be no doubt that his interest was an insurable one; and, if so, it necessarily follows that Abrams did not have the entire beneficial interest in the hay.   Yet he represented the entire 600 tons to be "his," and, indeed, still so insists in his testimony in this case, in which respect he was sustained by the court below in at least one instruction given to the jury, and in its action in refusing certain instructions requested by the defendant.   In these respects, error was, in my opinion, committed, as well as in the refusal of the court below to instruct the jury to return a verdict for the defendant, as requested by the defendant's attorney.   I think the judgment should be reversed, and the cause remanded, with instructions to award a new trial.