GERMAN INSURANCE CO. OF FREEPORT, ILL., V. SOPHIA HYMAN.

[FILED MAY 18, 1892.]

1. **Husband and Wife: GIFTS.** A gift to a married woman by her husband of money or property is valid except as against the creditors of the latter and those having the equities of creditors.

2. ———: ———: INSURANCE. Plaintiff, a married woman, had been engaged in mercantile business for four years in her own name on capital in part given her by her husband and in part the proceeds of her own labor. Her store was destroyed by fire. In an action against an insurance company on a contract of insurance, in the absence of evidence of an intention to defraud the defendant, *held*, that the motive of the husband in giving the property to plaintiff is immaterial.

3. **Trial: OFFER OF TESTIMONY.** Where evidence is excluded on objection of the adverse party, the party offering the evidence should offer to prove the fact which he desires to put in evidence in order that this court may determine from the record its relevancy.

ERROR to the district court for Seward county. Tried below before NORVAL, J.

*J. R. Wash,* and *Adams & Scott,* for plaintiff in error:

If defendant in error was not the actual and *bona fide* owner she cannot recover (*Baldwin v. Ins. Co.,* 15 N. W. Rep. [Ia.], 300), and extrinsic evidence is admissible to show that she is not the owner or to show who the owner is. (Abbott's Trial Ev., 487). She could not, while thus fraudulently holding the property by representing to the insurance company that she is a good faith owner, procure insurance on it which she could not procure if the facts were known to the insurance company, and after fire recover for the value of the goods. (*Lipscomb v. Lyon,* 19 Neb., 511; *McCann v. Ins. Co.,* 3 Id., 198.) Every fact or circumstance from which a legal inference of fraud may be drawn is admissible. (*Yerkes v. Wilson,* 81* Pa. St., 9;

German Ins. Co. v. Hyman.

*Day v. Stone,* 59 Tex., 612; *Phillips v. State,* 8 Am. St. Rep. [Tex.], 471; *Jones v. Clifton,* 101 U. S., 225.)

*Norval Bros. & Lowley,* and *D. C. McKillip, contra:*

No one but the creditor of the husband who has been defrauded, delayed, or hindered by his having given his money to his wife can question the title of the wife. (*Burgett v. Burgett,* 1 O., 483; *Nash v. Atherton,* 10 Id., 163; 8 Am. & Eng. Encyc. Law, 749, 774.) The insolvency alone of the grantor is not sufficient evidence of a fraudulent design. (*Leffel v. Schermerhorn,* 13 Neb., 343.) Nor is the fact that Louis Hyman worked for his wife in carrying on the business and trade in goods destroyed, as her agent, any evidence of fraud. (*Arndt v. Harshaw,* 10 N. W. Rep. [Wis.], 391 ; *Feller v. Alden,* 23 Wis., 301; *Dayton v. Walsh,* 47 Id., 113 ; *Sears v. Robinson,* 16 N. W. Rep. [Ia.], 66.) If these moneys were exempt in the husband's hands at the time of the gift to his wife, according to the laws of Nebraska they will be presumed to have been exempt in Ohio. (*Ruth v. Lowrey,* 10 Neb., 261; *Lord v. State,* 17 Id., 530.) Exempt property is not susceptible of fraudulent alienation or transfer. (*Derby v. Weyrich,* 8 Neb., 177; *Boggs v. Thompson,* 13 Id., 405 ; *Gillespie v. Brown,* 16 Id., 460; *Schribar v. Platt,* 19 Id., 631; *Allen v. Perry,* 14 N. W. Rep. [Wis.], 6.) If the earnings were exempt from execution at the time they were employed in the acquisition of the property, such gift is not a fraud upon the creditors of the husband. (*Robb v. Brewer,* 15 N. W. Rep. [Ia.], 420.) The party must make an offer to prove the fact or facts sought to be elicited by the question in order to predicate error. (*Master v. Marsh,* 19 Neb., 458.)

Post, J.

This was an action on a policy of insurance issued by the plaintiff in error to the defendant in error on a stock

48

of millinery and fancy goods. Plaintiff below recovered judgment in the district court of Seward county, which we are called upon to review upon a petition in error filed by defendant below. The chief ground of contention in this court by plaintiff in error is that the defendant in error, Sophia Hyman, was not the owner in good faith of the goods in question and that they had been purchased with money and the proceeds of property given her by her husband, Louis Hyman, for the purpose of defrauding the creditors of the latter.

From the bill of exceptions it appears that for about three years prior to 1881 the said Louis Hyman had been engaged in the mercantile business in his own name at Mt. Vernon, Ohio. In that year he made an assignment for the benefit of creditors. From the time of his assignment until about the time they located in Seward, in 1884, both husband and wife were employed in clerking for the brother of the husband in Mt. Vernon. They testify that all the earnings of both were given to defendant in error, and it was with the money thus acquired that she commenced business in Seward. From April or March, 1884, until the store was destroyed by fire, March 24, 1889, the business was conducted in the name of the defendant in error. There is no evidence that Louis Hyman was owing any debts at the time the money aforesaid was given by him to his wife, nor is there any evidence tending to prove that he was at any time insolvent, except the fact that he made an assignment in 1881. The following special findings were returned by the jury at the trial in the district court.

"No. 1. Where did the plaintiff get the money with which she purchased the goods to start into business? Answer—Partly her own earnings, and balance given to her by her husband.            L. A. WELDON, *Foreman.*

"No. 2. Did not plaintiff's husband make and earn the money with which the goods to start into business were bought? Answer—Partly.

"L. A. WELDON, *Foreman.*

"No. 3. Did not the husband of the plaintiff give her the money with which the goods to start into business at Seward were bought, and was he not at the time he gave it to her indebted to certain parties from whom he had purchased goods while in business at Mt. Vernon, Ohio? Answer—No.          L. A. WELDON, *Foreman*.

"No. 4. Is not the plaintiff's husband still indebted for goods that he purchased while in business in Mt. Vernon, Ohio?   Answer—No.      L. A. WELDON, *Foreman*.

"No. 5. At the time plaintiff's husband (Louis Hyman) gave her the money with which to purchase the goods to start into business at Seward (if he did give it to her) was he owing her anything, and if he was owing her, state how much and what for?   Answer—No.

"L. A. WELDON, *Foreman*.

"No. 6. Did the plaintiff or her agent at any time since the fire make out an inventory or list of the damaged property, and in said inventory give the cost of each kind? If she did, state when.   Answer—Yes; on the 5th day of April, 1889.          L. A. WELDON, *Foreman*."

There is no merit in the claim of plaintiff in error. The title of defendant in error to the property insured was complete and perfect. There is nothing in the evidence even suggestive of fraud. Had Louis Hyman been involved financially to any considerable amount at the time he gave the money or property to his wife, or if he had contracted debts about that time or subsequent thereto, there might have been some foundation for the charge of fraud. It does not follow, however, that fraud on the part of Louis Hyman would have been available as a defense in this case. It is only as against creditors and those entitled to the equities of creditors that voluntary conveyances are held to be fraudulent and void. (Wait on Fraud. Conv., sec. 197; **8 Am.** & Eng. Encyc. of Law, p. 774, and note.) It is said **in** May on Fraudulent Conveyances, marginal page 364: "A voluntary settlement made by a person in-

debted and therefore constructively fraudulent within 13 Eliz., ch. 5, is void only as against creditors, and only to the extent to which it may be necessary to deal with the estate for their satisfaction."

The cases cited by plaintiff in error do not sustain the proposition contended for. They are mostly cases in which the rights of creditors only were involved. The only exception is *Baldwin v. State Insurance Co.*, 60 Ia., 497. In that case the party to whom the policy was issued did not claim any interest whatever in the property. Suppose plaintiff in error were a trespasser instead of an insurer and was called upon to answer for a conversion of the property. Would it be heard in defense to say that the title of the insured had been acquired in fraud of the rights of a third party? Certainly not. Nor is there any rule of law or morals which will sanction such a defense in this action. It is said that had the plaintiff in error known of the business record of Louis Hyman, that is, the fact that he had once made an assignment, it would have refused to insure the property. It is a sufficient answer to this claim that there is no rule of law which imposes upon the owner of property the duty to volunteer such information to an insurance company. An interest, to be insurable, does not depend necessarily upon the ownership of the property. It may be a special or limited interest disconnected from any title, lien, or possession. If the holder of an interest in property will suffer loss by its destruction he may indemnify himself therefrom by a contract of insurance. If, by the loss, the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien resting thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest. (*Merrett v. Farmers Ins. Co.*, 452 Ia., 11; Phillips, Ins., secs. 175, 342, 346; Flanders, Ins., p. 342.) And in *Pettigrew's Case*, 28 U. C., 70, it is held that a purchaser has an insurable interest in property, although the sale was in fraud of

the rights of creditors.    It is not necessary to set out the instructions asked by the plaintiff in error, as they merely state the proposition in different forms that the plaintiff below could not recover on the ground that the gift of the money and property in question to her by her husband was in fraud of creditors.    They were properly refused. Plaintiff in error introduced a witness who had seen the stock of goods some time in the fall previous to their loss, and sought to prove their value at said time.    Objection was made to the question on the ground that no foundation had been proved, and because the time laid was too remote, which objection was sustained.    This ruling is also assigned as error.    The objection was well taken and rightly sustained.    Even if the proper foundation had been laid we are unable to determine that the court erred, since there was no offer to prove any value.    The plaintiff in error should have made his offer in order that the court might be able to determine the materiality of the evidence.  (*Mathews v. State,* 19 Neb., 330; *Yates v. Kinney,* 25 Id., 120.)    There is no error in the record and the judgment of the district court is

AFFIRMED.

MAXWELL, CH. J., concurs.

NORVAL, J., did not sit.