## SCOTTISH UNION AND NATIONAL INSURANCE COMPANY *v.* COLVARD, executrix, *et al.*

1. If there was any breach of the stipulation in the policy prohibiting any change in the title, interest, or possession of the assured, the insurance company was estopped from claiming a forfeiture on that ground, by reason of the fact that its adjuster, with full knowledge of the facts giving rise to such claim of forfeiture, demanded of and caused the assured to incur trouble and expense in furnishing an estimate of a builder showing the value of the property insured and' destroyed by fire.

2. Where a policy on the property of a mortgagor is made payable to the lender as his interest may appear, and the insurance company by separate agreement with the lender is obligated to pay the latter notwithstanding it may deny liability to the assured, with the right under such agreement to be subrogated to the rights of the lender against the assured, and pays the lender with a denial of liability to the assured, but is in fact at the time liable to the assured, the payment to the lender operates, at the time it is made, to extinguish pro tanto the debt of the assured to the lender; and in a suit wherein it is sought to obtain against the assured a judgment on her notes transferred by the lender to the insurance company in consideration of such payment, the assured may plead the fact of payment, notwithstanding a failure to furnish proofs of loss, or to commence suit on the . policy within the time prescribed therein, the payment ·to the lender having been made before the expiration of such time.

SEPTEMBER 30, 1910.

Equitable petition. Before Judge Ellis. Fulton superior court. May 29, 1909.

*Willis M. Everett,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson,* contra.

HOLDEN, J.   Mrs. L. F. McCroskey (hereinafter called the assured) executed to the Security Investment Company (hereinafter called the lender) three promissory notes of $1,000 each, to secure a loan from that company to her on a farm, with a dwelling thereon, owned by her.   While the loan was in force, Mrs. McCroskey insured the dwelling for $1,500 with the Scottish Union & National Insurance Company (hereinafter called the insurer, or insurance company).   By the terms of the policy any loss thereunder was made payable to the lender, for itself or as agent for its assigns.   One of the provisions of the loan agreement was that the borrower should keep the property insured for the benefit of the lender.   The insurance company was under an agreement (which was made independent of the policy between the insurance company and what was termed the "Association," the latter represent-

ing certain lenders, including the lender in the instant case) that so far as the lender was concerned the policy should not be invalidated by any act or neglect of the insured, "nor by any defect in or any change in title, occupation, or ownership of said property." This agreement further provided that whenever the insurance company should pay to the lender any sum for loss or damage under the policy, "and shall claim that, as to the mortgagor or owner, no liability therefor existed, the said insurance company shall, to the extent of such payment, be subrogated to all the rights of the said Association under all securities held by it as collateral as to the mortgage debt."

In July, 1903, the buildings covered by the insurance were destroyed by fire. Some preliminary negotiations (not necessary to be detailed here, but which will be adverted to later on) were had between the insurer and the assured, relative to an adjustment of the loss. Afterwards the adjuster of the insurer learned that there had been a contract between the insured and a third person, by virtue of which the latter was placed in possession of the property prior to the fire. He wrote to the attorney for the insured to ascertain the nature of the contract; whereupon the latter replied, in effect, that the contract was not one violative of any provision in the policy relating to change of title, interest, or possession. The policy contained a provision that it should be void in the event "any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard)  .   .   by voluntary act of the insured, or otherwise." The letter of the attorney above referred to was forwarded by the adjuster to the insurance company, which replied that the policy was void as to the insured by reason of breach of the above-quoted condition, but that the insurer was obligated by reason of its contract with the lender to pay it the amount of the loss, and directed that this be done and an assignment to the extent of the payment be taken from the lender, subrogating the insurer to the lender's rights against the insured to that extent. This correspondence was had during September and October next succeeding the fire in July. On December 26, 1903, the insurer took from the lender an instrument of this character, wherein the lender acknowledged receipt of $1,500 as the full amount of the policy, and recited that, as the insurer

claimed no liability existed as to the assured, the lender assigned to the insurer "all its [the lender's] rights under said mortgage and all securities held by it as collateral to the mortgage debt to the extent of said payment to them of fifteen hundred ($1,500) dollars, priority being given the debt due" to the lender.

In December, 1906, William F. Tait, as transferee of one of the $1,000 loan notes and of the half interest in another, brought suit against the executrix of the estate of Mrs. McCroskey, the insured, to recover the amount of principal and interest due thereon to him. In answer thereto, the defendant set up the execution of the three notes for $1,000 each to the Security Investment Company heretofore mentioned, the payment by the insurer to the lender of $1,500, and that, instead of crediting her with the $1,500 thus paid, the lender had unlawfully and against her protest transferred one of the notes and one half of another to the insurer, and insisted that each of the outstanding loan notes, those in the hands of the plaintiff and those transferred to the insurer, was entitled to a credit of one half of principal and one half of interest, and prayed that the insurance company be made a party to the suit. The latter, having been made a party, filed its answer, claiming that it was entitled to collect the notes transferred to it in full, having paid full value therefor, and denied that it was in any way liable to the defendant on account of the insurance policy heretofore mentioned. By amendment the insurance company asserted that it was not liable on the policy, because the insured, before the fire occurred, had made a contract of sale of the property and the purchaser had gone into possession, thereby violating the stipulation in the policy that it should be void if any change in the title, ownership, or possession of the insured took place by the voluntary act of the insured; and further contended that it was not liable, because the defendant had neither furnished the company with proof of loss as provided in the policy, nor commenced an action thereon within twelve months from date of fire, as also provided. The case was submitted to the judge as the trior of both law and fact. His decision was adverse to the contentions of the company, and it excepted.

1. One of the contentions of the executrix of the assured is, that if there was any forfeiture of the policy worked by the alleged contract of sale, changing the title, interest, or possession of the assured with respect to the property destroyed by fire, the insurance

company had waived such forfeiture and was estopped from assert-
ing the same. The assured died in the spring of 1903, and the fire
occurred on July 27 next thereafter. The executrix qualified in
September. The letters which we will now refer to were all writ-
ten in 1903. On September 29, the adjuster wrote to the attorney
for the assured that he had just learned that the assured had made
a sale of the property to a Mrs. Davis after the policy was issued,
and wished to know the facts regarding such sale. On September
30, the attorney wrote to the adjuster in regard to the nature of
the contract, and that no such contract was made as vitiated the
policy. This letter was sent by the adjuster to the insurance com-
pany, and its agency superintendent wrote to the adjuster, on
October 17, that the contract between the assured and Mrs. Davis
forfeited the policy, and the proper thing to do was to pay the
lender and take from the latter a transfer of the obligation of the
assured to the lender, in accordance with the contract referred to
in the statement of facts existing between the insurance company
and the lender. In this letter it was stated, "After this, you can
settle with the assured, or not, upon such terms as you deem best."
On November 2, the agency superintendent wrote to the adjuster,
directing him to make a settlement with and take a transfer from
the lender and close the matter up. On November 11 a copy of
this letter was sent to the attorney for the executrix of the assured,
by a representative of the lender. On November 14, the adjuster
wrote to the executrix as follows: "Your letter of the 9th inst. re-
ceived. I wrote you sometime ago, and also Mr. Crafts, asking
that you send me a builder's estimate of the property. Kindly
give this your attention, and we will act promptly." On November
20, the adjuster wrote to the attorney for the executrix, that the
last-mentioned letter had been returned to him, presumably from
lack of proper address; that he was anxious to have the executrix
comply with his request for a builder's estimate; and asked that
the attorney write for him to the executrix about the matter, clos-
ing the letter with the following statement: "You are no doubt
familiar with the terms of insurance policies, and know that we
have a right to call upon the assured for this." On December 8,
the attorney of the executrix sent the adjuster "an estimate made
by the builder," giving the value of the property burned. On De-
cember 9, the adjuster wrote to the attorney, acknowledging receipt

of the builder's estimate, and stating that it varied from another which he had; it varied in one particular in that it estimated the value of the property at $1,720, whereas the one he had estimated it at $2,650. This letter closed with the statement, "I am satisfied that Mrs. Colvard had better have Mr. Horne go over his figures again, as the ¾ clause is in the policy and may come up in connection with this loss, and I do not wish this to play any part in the adjustment." On December 31, the adjuster wrote to the attorney that he appreciated his kindness in the matter, and would not trouble him further in regard to it; and on January 5, 1904, the adjuster wrote the attorney that he had completed the adjustment of the matter with the agent of the lender, and would settle with him the full amount of the policy, provided the lender would consent to one requirement of its agent. This letter closed with the statement, "It is therefore, in all probability, unnecessary for you to trouble yourself further in regard to it."

Conceding, without deciding, that the contract of the assured with Mrs. Davis worked a forfeiture of the policy, we think that the conduct of the adjuster of the insurance company, after having knowledge of such facts as, according to the contention of the insurer, worked the forfeiture, estopped the insurer from claiming such forfeiture, if there was any. After such knowledge was obtained by the insurance company, it wrote to the adjuster that the company should pay the lender according to its agreement with the lender, and after this, "settle with the assured or not upon such terms as you deem best." The adjuster then wrote to the executrix of the assured and her attorney, to have a builder make an estimate of the value of the property burned; that he had a right to require this under the terms of the policy; and that upon receipt of such estimate he would act promptly in regard to the matter. While it does not appear from the record that the executrix incurred any expense for the service rendered by the builder in making the estimate, it is fair to presume that such expense was incurred; and we think the insurance company was estopped from asserting a forfeiture of the policy, if any right to do so existed, where, after it had knowledge of the facts which it contended worked the forfeiture, it required the assured to incur trouble and expense in having an estimate of the value of the property destroyed made by a builder, and did not in connection with such request inform the

assured that it expected to insist on such forfeiture. The adjuster, at the time of making such request and causing the executor of the assured this trouble and expense, had authority from the company to disregard the forfeiture if he saw fit, and settle with the assured upon such terms as he deemed best; and his dealing with the assured as above outlined, looking to an adjustment, without any reservation of the right to claim a forfeiture, might fairly justify the executrix in believing that it was his intention to forego the forfeiture and settle the loss under the terms of the policy. In this connection, see 3 Cooley's Briefs on Ins. §§ 2733, 2739. Unless such conduct on the part of the adjuster caused her to believe that a forfeiture, if any existed, would not be insisted upon, it is not fair to presume that the executrix would have incurred the expense and trouble of furnishing a builder's estimate of the property burned. It does not appear that any agent of the insurance company had the agent of the lender to send to the attorney for the insured the letter to the adjuster from the insurer, claiming that the contract with Mrs. Davis and the owner worked a forfeiture of the policy; nor does it appear that the insurer, or its agents, ever notified the executrix of the assured, or her attorney, before or at the time of the payment to the lender, that any forfeiture of the policy was claimed. The policy provided: "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for." The conduct of the adjuster hereinbefore set forth involved no "proceeding on its part relating to the appraisal or to any examination" referred to in the policy. The "appraisal" and "examination" mentioned in the above-quoted provision of the policy refer to matters other than that of an estimate of the builder of the value of the property destroyed, which was requested by the adjuster.

2. Having determined that the insurance company was estopped from insisting that there was any forfeiture of the policy, and as the company was compelled to pay the lender in any event, payment by the insurance company to the lender operated as a payment on the debt of the insured to the lender, and operated at that time to discharge, to the extent of the payment, the debt of the assured to the lender. The payment was a conclusive admission of

13

loss; and the company is in no position to contend that the payment it made should not thus operate because proofs of loss were not furnished.    The requirement in the policy that suit be commenced thereon within twelve months from the date of the fire has no application in this case, holding, as we do, that the payment by the insurance company to the lender was an extinguishment pro tanto of the debt of the assured to the lender.    It was a settlement of the policy as far as concerned the assured, as well as the lender, and no suit by the assured on the policy was necessary. It follows that the assured, in a suit wherein the insurance company sought to enforce against her the notes transferred to it by the lender, could interpose in defense thereof a plea of payment, as she did in this case.    See 4 Cooley's Briefs on Ins. 3917.

*Judgment affirmed.    All the Justices concur, except*

Lumpkin, J., dissenting.    I concur in the principle stated in the second headnote.    I do not think the facts of the case can be declared as matter of law to work an estoppel on the insurance company: