## PIKE *v.* AMERICAN ALLIANCE INSURANCE COMPANY.

Construing the questions (a), (b), and (c), certified by the Court of Appeals, in connection with the statement of facts as set forth, it does not appear that the insurer makes any contention that there is no liability to P. (the insured named in the policy) merely on account of a sale of the property without the consent of the insurer; but the contention is that there is no liability to P., because of the felonious act of K. (a subsequent transferee) in burning the property. In the light of this construction, each of these questions above mentioned is answered in the affirmative. The remaining question does not require an answer. (GILBERT and HINES, JJ., dissent.)

No. 4099.    SEPTEMBER 4, 1924.

The Court of Appeals (in Case No. 14872) certified the following questions for decision, as necessary to a proper determination of the case: "Where P. was the owner of improved real estate, and, on October 10, 1918, procured a loan thereon from S., evidenced by a promissory note and secured by a deed of conveyance to the property, and where on the date of the loan P. procured and paid for a policy of fire insurance upon a building situated upon the land included in the security deed, in which policy it was stipulated that the insurer 'does insure [P.] for the term of three years,' and in which was contained what is called the 'New York stand-

ard mortgagee clause,' stipulating, among other things, that 'loss or damage, if any, under this policy, shall be payable to [S.] as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property,' and that 'whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owners, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of her claim;' and a further clause stipulating that 'if this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment; and where thereafter, on October 16, 1919, P., by a deed of conveyance, sold and conveyed to H. S. all of his interest in the real estate, subject, however, to the loan and the security deed in favor of S., and on August 9, 1920, H. S. contracted to sell the property to K., and thereupon executed to K. a bond for title, under which K. went into the possession of the property, the insurer having duly accepted notice by timely and respective entries upon the policy that the interest therein of P. was transferred to H. S., and that the interest of H. S. therein was subsequently transferred to K., in accordance with the statement above; and where on April 2, 1921, while the loan first above mentioned was still outstanding and unpaid, and while the policy was still in force, the house so insured was wilfully and criminally set on fire and destroyed by K., without the knowledge or consent of P., who 'had nothing to do with the burning of the same, nor

was it burned through his procurement,' and where the insurer, claiming that, because of the burning of the house by K. as stated above, 'there was no liability existing under the policy in question to the mortgagor or owners of the property,' without the knowledge of P., paid to S., 'under the terms of the New York standard mortgagee clause attached to said policy,' the above-mentioned note and the coupons attached, not exceeding the amount of the policy, and in consideration of such payment and upon the request of the insurer the note and coupons and the security deed were transferred, assigned, and delivered by S. to the insurer, including a conveyance of the title of S. to the property described in the security deed, the insurer having 'refused to pay the note and coupons held by [S.] until the transfers and assignments above referred to were made and the policy surrendered to the [insurer] from whose possession it now comes;' (a) did such payment by the insurer to S. operate as an extinguishment of the note and coupons as to P., notwithstanding the transfer thereof with the securities to the insurer? (b) Was the payment by the insurer to S. a payment upon the policy as to P.? (c) Is P. entitled to assert the same as a payment, satisfaction, or discharge of the note and coupons when sued thereon by the insurer as transferee? (d) If any one of the foregoing questions should be answered in the negative, would the same be true if upon the sale by P. to H. S. he notified the duly constituted agents of the insurer 'that the property had been sold and that the insurance under said policy was to be payable, in case of loss, first to [S.], . . and that the interest of [P.], with the exception of the [above-quoted] loss-payable clause to [S.], had been transferred to [H. S.]?'"

*Etheridge, Sams & Etheridge,* for plaintiff in error.

*Smith, Hammond & Smith,* contra.

ATKINSON, J. In the case of *Scottish Union & National Insurance Co.* v. *Colvard,* 135 Ga. 188 (68 S. E. 1097), the original record of file in this court shows the following facts. The owner of land on which a building was located obtained a loan of $3,000, for which she executed three promissory notes for $1,000 each and a security deed to the land. She subsequently procured a fire-insurance policy on the building in her name, to the amount of half of the loan, to which was attached a "New York mortgage clause," similar to that stated in the questions propounded by the Court

of Appeals, in favor of the lender. The building was destroyed by fire, causing a loss within the contemplation of the insurance policy. The insurance company investigated the loss, and caused the owner to incur trouble and expense. After doing this the insurer, denying liability to the owner, paid the full amount of the policy to the lender under its obligation as provided in the "New York mortgage clause," and received from the lender an assignment of one of the notes and half interest in another and the security securing such debt. A separate assignment was executed by the lender, to the insurer, of "all the right, claims, interest, choses or things in action, to the extent of fifteen hundred ($1,500.00) dollars paid them as aforesaid, which they may have against Mrs. L. M. McCroskey [the person as whose property the building was insured] or any other party, person, or corporation, who may be liable, or hereafter adjudged liable, for the burning or destruction of said property." After such assignments the insurance company brought suit against the maker of the assigned notes, and prayed for a special lien on the land. The defendant pleaded that in the circumstances the payment to the lender was a discharge pro tanto of the debt, and that the insurer did not acquire any right over against defendant or the property for reimbursement. The insurer contended that it had never become liable to the owner for the amount of the loss, because: (a) after the policy of insurance was issued the insured made a contract of sale of the property without the consent of the insurer, the effect of which, under the provisions of the policy of insurance, was to render the contract void; (b) the insured had failed to furnish proofs of loss as provided in the contract of insurance; (c) the insurer had an agreement with the lender, commonly known as the "New York mortgage clause," whereby the insurer could not avail itself, as to the lender, of the defenses mentioned in (a) and (b) above, but that under such agreement the insurer was entitled to take subrogation as to the money which should be paid by it to the lender. It pleaded that, acting under such right of subrogation, it took a transfer of one half of the loan debt and the security deed from the lender, and was the bona fide holder of said indebtedness. As to these matters the judge, trying the case by consent without a jury, found for the defendant, and subsequently refused the plaintiff's motion for a new trial. That judgment was

44

affirmed by this court on review. The language employed for the court in the headnotes was:

"1. If there was any breach of the stipulation in the policy prohibiting any change in the title, interest, or possession of the assured, the insurance company was estopped from claiming a forfeiture on that ground, by reason of the fact that its adjuster, with full knowledge of the facts giving rise to such claim of forfeiture, demanded of and caused the assured to incur trouble and expense in furnishing an estimate of a builder showing the value of the property insured and destroyed by fire.

"2. Where a policy on the property of a mortgagor is made payable to the lender as his interest may appear, and the insurance company by separate agreement with the lender is obligated to pay the latter notwithstanding it may deny liability to the assured, with the right under such agreement to be subrogated to the rights of the lender against the assured, and pays the lender with a denial of liability to the assured, but is in fact at the time liable to the assured, the payment to the lender operates, at the time it is made, to extinguish pro tanto the debt of the assured to the lender; and in a suit wherein it is sought to obtain against the assured a judgment on her notes transferred by the lender to the insurance company in consideration of such payment, the assured may plead the fact of payment, notwithstanding a failure to furnish proofs of loss, or to commence suit on the policy within the time prescribed therein, the payment to the lender having been made before the expiration of such time."

In the 2d division of the opinion Holden, J., said: "Having determined that the insurance company was estopped from insisting that there was any forfeiture of the policy, and as the company was compelled to pay the lender in any event, payment by the insurance company to the lender operated as a payment on the debt of the insured to the lender, and operated at that time to discharge, to the extent of the payment, the debt of the assured to the lender. . . It was a settlement of the policy as far as concerned the assured, as well as the lender, and no suit by the assured on the policy was necessary. It follows that the assured, in a suit wherein the insurance company sought to enforce against her the notes transferred to it by the lender, could interpose in defense thereof a plea of payment, as she did in this case.

See 4 Cooley's Briefs on Ins. 3917." Lumpkin, J., concurred with all the other Justices "in the principle stated in the second headnote," but did not concur in the principle stated in the first headnote. It will be perceived from the foregoing decision that this court held in effect, that, under the facts of the case, there was a liability by the insurer to the owner as whose property the building was insured, and that payment by the insurer to the lender under the New York mortgage clause was, as between these parties, a pro tanto discharge of the debt, and could be so pleaded by the insured in a suit instituted against her by the insurer as transferee of the debt owed to the lender. Upon this question the decision was concurred in by all the Justices, and is now binding authority upon this court. The subsequent decision in *Peoples Bank* v. *Insurance Co.*, 146 *Ga.* 514 (91 S. E. 684, L. R. A. 1917D, 868), which failed to mention the above decision, had reference to a case in which the insurer was not liable to the person as whose property the building was insured, because that person obtained additional insurance on the property without the assent of the insurer, in violation of the contract, which under the provisions of the contract rendered the policy or contract void as to such person. Under those circumstances it was held that payment by the insurer to the lender and a transfer of the debt and security by the lender to the insurer, in virtue of the New York mortgage clause attached to the policy of insurance, conferred upon the transferee the right to enforce the debt against the borrower, or the person as whose property the building was insured. Under the facts of the case the decision does not conflict with the ruling of this court in *Scottish Union & National Insurance Co.* v. *Colvard,* supra; for the decision in that case was predicated on the fact that the insurer was liable on its contract of insurance to the person as whose property the building was insured, impliedly recognizing that the rule would be different if the insurer was not so liable.

It follows, that, under the former rulings of this court if an owner of land on which there is a building obtains a loan and executes his notes for the amount and a deed to the property as security for the debt, and procures a contract of insurance in his own favor insuring the building against loss by fire, and causes the insurer to attach to the policy a New York mortgage clause

in substance as stated .in the question propounded by the Court of Appeals, and·if after being so insured the building is destroyed and a loss ensues for which the insurer is liable to the person as whose property the building was insured, and in such circum-
·stances the insurer pays the amount of the loss to the lender, asserting and claiming at the time of such payment that there is no liability to the person as whose property the building was insured, such payment will operate in favor of the borrower as a pro tanto discharge of the debt as against the lender, and the insurer will not acquire any equitable right of subrogation, or right by transfer of the notes and the security to maintain a suit against the borrower or the property. for the amount so paid to the lender. It does not appear from the questions propounded by the Court of Appeals that the insurance company made any con-`tention that it was not liable to the person as whose property the building was insured on its contract of insurance, on account of mere change of ownership of the property; but it appears that the company contended that it was not liable to such insured, because the remote transferee of the insured feloniously burned the building. The exact language of the Court of Appeals, in stating the contention that was made by the insurance company, is: "and where *the insurer, claiming .that, because of the burning of the house by K. as stated above, ' there was no liability existing under the policy in question to the mortgagor* or owners of the property.' " (Italics ours.) It further appears from the facts stated in the questions that the person so insured had nothing to do with the burning, but was innocent of the offense. In these circumstances the fact that the loss resulted from the criminal act of the remote transferee would not excuse the company from its liability to the person first insured. Under a proper construction of the questions propounded by the Court of Appeals, the questions (a), (b), and (c) are answered in the affirmative. The question (d) does not require an answer.

*Answers in the affirmative. All the Justices concur, except Gilbert and Hines, JJ., dissenting.*

GILBERT, J., dissenting. The statement of facts certified by the Court of Appeals in connection with the question shows, first, that P. owned improved real estate; second, that P. insured the same; third, that he borrowed money on the property insured, and

executed a note and a security deed to the lender; fourth, that a loss-payable clause was attached to the policy, providing that loss or damage, if any, under the policy, should be payable to the lender as his interests might appear; fifth, that the interest of the lender in the insurance should not be invalidated by any act or neglect of the mortgagor or of the owner of the property; sixth, that whenever the insurance company should pay the lender any loss or damage under the policy and claim that no liability existed as to the borrower or the owner, the insurance company, to the extent of the payment, should thereupon be legally subrogated to all the rights of the lender under the note and security deed; seventh, that no subrogation should impair the right of the lender to recover the full amount of the debt due; eighth, that if the insurance company should claim that the fire loss was caused by the act or neglect of any corporation private or municipal, the company, upon payment of the loss, should be subrogated, to the extent of the payment, to all right of recovery by the insured for the loss, such right to be assigned to the company by the insured; ninth, that after the issuance of the policy and the execution of the note and loan deed P., the owner of the property, *by deed, sold and conveyed to H. S. all of his interest in the property,* subject to the rights of the lender under the security deed; tenth, that thereafter H. S., who purchased from P., contracted to sell the property to K., and executed a bond for title under which K. went into possession of the property; eleventh, that the insurance company duly accepted notice of all the preceding facts, and made timely and respective entries on the policy accordingly, "that the interest of P. was transferred to H. S., and that the interest of H. S. therein was subsequently transferred to K; twelfth, that subsequently to all of the above, and while the policy was still in force, the house so insured was wilfully and criminally set on fire and destroyed by K., without the knowledge of P.; thirteenth, that *the insurance company, claiming that because of the burning of the house by K., as stated above, there was no liability existing under the policy in question* "to the mortgagor or owners of the property," without the knowledge of P. paid the lender the amount due on the note of P., and took a transfer of the note and the security deed, including a conveyance of the title of the lender in the property described in the security deed; fourteenth, that

the insurer refused to pay the amount due on the note held by the lender, without a transfer and assignment and surrender of the policy to the insurance company. The effect of the questions (a), (b), and (c) is to inquire whether the payment by the insurance company to the lender of the amount due operated for the benefit of P., the original owner of the property, who obtained the loan, executed the note and deed, and who also obtained the policy of insurance.

In order for the payment by the insurance company to the lender of any amount under the policy to operate for the benefit of P., P. must have had some interest in the policy of insurance. What interest did he have? As originally issued, P. was named as the insured and had an interest in the policy. When the loss-payable clause was attached, providing for the payment to the lender as his interests might appear, the rights of the lender under the policy, to the extent of the amount due, became superior to the rights of P., the insured, and the only interest left to P. under the policy was a right to recover to the extent of his interest in the property whatever amount of fire loss occurred within the limits of the policy and in excess of the amount due to the lender. Subsequently, however, P., the original owner and insured, sold and conveyed his entire interest in the property to H. S., and so notified the insurance company. When that was done P. parted with the only interest he had in the property, and no longer held any insurable interest; and had a fire occurred at that time the insurance company would have been liable, if at all, first, to the lender and holder of the security deed; second, to H. S., the grantee who acquired all the interest of P. It should be noted at this point, as a matter of prime importance, that P. parted with all interest in the property, and that under no view of the case was he then an interested party to the insurance contract which he had originally secured. The insurance company owed to him no obligation, and therefore there could be no liability on the policy to P. The fire, however, did not occur at that time; but subsequently H. S. contracted to sell and executed a bond for title to one K., who went in possession of the property under the contract of purchase. The insurance company was duly notified, and accepted notice. Thereupon K. became the insured, and all obligations under the policy and all insurable interest so far as the

question discloses, other than that which the lender continued to possess, was in K. K. burned the property and forfeited all right to recover on the policy. Save the lender, no one else had any right under the policy. A denial by the insurance company of liability to K. was a denial of liability to the only person, save the lender, who had any right under the policy and to whom or in regard to whom the insurance company had any cause to make denial of liability. P. had no interest in the property, and there was no reason why the insurance company should specifically deny liability to him. Moreover, it does not appear from the question that P. ever asserted any interest in the policy. Parenthetically it should be stated that there is no reason to construe the question as failing to show that the insurance company denied liability to P. except on account of the burning of the property by K. It is true that the question propounded states that liability of the mortgagor or owner on account of the burning was denied only to the person who had an insurable interest, and who was, at the time of the burning, the insured.

We are not required to look beyond the question, to ascertain the facts; but we can do so if the ends of justice require it. Accordingly reference has been made to the agreed statement of facts contained in the record. There we find, after a statement of all of the facts of the case, which included the transfer and assignment on the policy of all of his insurable interest, as well as a statement of the fact of the burning by K., that the insurance company "denied liability." For the reasons stated above, however, it is not necessary for the insurance company to deny liability to P. Stating the facts differently, S. loaned money to P. and took a note and security deed; also a policy of insurance providing, in case of loss, for payment to the lender as his interests might appear. The lender held the note and mortgage, which he had the legal right to sell and transfer. The insurance company had, under express provisions of its policy, under stated conditions, the right to buy and take an assignment of the note and mortgage under conditions named in the policy. It did purchase the note and took an assignment and transfer of the note, the security deed, and all of the title to these papers and to the property possessed by the lender. The insurance company then was a creditor of P., and as evidence thereof held his note secured

by deed. So far as shown by the question, it was a valid note and deed. P. was bound to pay the amount due, unless he could show some valid defense, such as that the note was paid, or was for some reason void and unenforceable. Obviously it was not void and unenforceable. Has it been paid? How? By reason of the fact that the insurance company paid to the lender, the owner of the note, the amount due thereon, under the precise terms and stipulations named in the policy. But in order for this to constitute a payment of the debt due by P., P. must have had some interest in the policy, and the insurance company must have owed some obligation or liability to P. which was enforceable; but, as we have seen above, P. had no interest in the policy, nor in the property insured at the time of the fire, and therefore there was no liability under the policy to P.

It may be suggested that in some indefinite way, or by reason of some undefined broad principles of right, notwithstanding K., the insured, had no claim on the insurance company, by reason of his own criminal act, yet, because he had contracted with P. to pay P.'s note and presumably had not done so, that P. ought to be able to collect under the policy what K. could not. No principle of subrogation can be applied here; in no view of the facts has subrogation any application. Even as a volunteer P. has paid out nothing for K., to protect himself in his rights. He has done nothing except to sell to H. S. all of his interest in the property. Whether he protected himself as to the payment of the note is no concern of the courts. He does not bring himself within any principle of subrogation known to the law. Subrogation must arise from contract, or it must arise out of principles of equity. There was no contract under which P. is subrogated to the rights of K. under the policy, and it is not remotely suggested that there is any principle of equity upon which it can be based. Lastly, since K. has forfeited all rights under the policy by his criminal conduct, it would be impossible and inconceivable that P. could derive any benefit through K. by subrogation. There was nothing in K. which could descend by subrogation to P. In addition to all that has been said above, question (d) indicates not only that upon the sale of the property by P. to H. S. he notified the insurance company that the property had been sold, *but that the insurance under said policy was payable, in case of*

*loss, first to S. the lender, and that the interest of P., with the exception of the interest of the lender, had been transferred to H. S.,* who was the vendor to K., who burned the property. This conclusively shows that P. had not only parted with all interest in the property, but had also parted with all interest under the policy of insurance prior to the time the loss occurred. For these reasons questions (a), (b), and (c) should be answered in the negative, and question (d) should be answered in the affirmative. The case of *Scottish Union &c. Insurance Co.* v. *Colvard, 135 Ga.* 188 (supra), is unlike the case with which we are now dealing, in its controlling feature. In the *Colvard* case the decision, in the first headnote, declared that the policy of insurance was binding and that the insurance company was liable to the insured. An issue had been raised as to the liability, based on the contention that the insured had, by a contract of sale, become other than the unconditional owner. This court held that the insurance company was estopped, by reason of its own conduct, from setting up that defense. In the case with which we are now dealing no question of estoppel is involved. There is no dispute as to where title to the property and interest under the policy of insurance rests. The insurance company has pursued the precise method provided in the policy itself for its own protection against robbery by an insured who was in possession under rights acquired by voluntary contracts with a previous owner who had acquired the same rights from P., the original insured. The principles ruled in *Peoples Bank of Mansfield* v. *Insurance Co., 146 Ga.* 514 (supra), are controlling in this case. I am authorized to say that Mr. Justice Hines concurs in this dissent.