## PIKE *v.* AMERICAN ALLIANCE INSURANCE COMPANY.

The opinion in this case contains the answers to the questions propounded by the Court of Appeals, which are quoted in full below, and which it is unnecessary to restate in the form of a syllabus.

No. 4535. MAY 12, 1925. REHEARING DENIED AUGUST 14, 1925.

The Court of Appeals (in Case No. 14872) requested instruction from the Supreme Court upon the following questions involved in this case:

1. Where P. was the owner of improved real estate, and, on October 10, 1918, procured a loan thereon from S., evidenced by a promissory note and secured by a deed of conveyance to the property, and where on the date of the loan P. procured and paid for a policy of fire insurance upon a building situated upon the land included in the security deed, in which policy it was stipulated that the insurer "does insure" P. "for the term of three years," and in which was contained what is called the "New York standard mortgage clause," stipulating, among other things, that "loss or damage, if any, under this policy, shall be payable

to" S. "as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property,". and that "whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owners, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of her claim;" and a further clause stipulating that "if this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated, to the extent of such payment, to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment;" and where thereafter, on October 16, 1919, P. by a deed of conveyance sold and conveyed to H. S. all of his interest in the real estate, subject, however, to the loan and security deed in favor of S., and thereupon notified the insurer "that the property in question had been sold and that the insurance under the said policy was to be payable, in case of loss, first to" S., and that the interest of P., with the exception of the above-quoted loss-payable clause to S., had been transferred to H. S., and on October 18, 1919, an entry was made upon the policy, signed by the insurer only, showing that it accepted notice that the interest of P., as assured, had been transferred to H. S., but it not appearing from the entry itself by whom or in what form such notice was given; and where the note and security deed from P. to S. remained outstanding and unpaid, the amount of such indebtedness not exceeding the amount of the policy, and where there are no other facts illustrating the right or interest of P. in the property in question or in the policy of insurance referred

to : (a) Did P., after the several transactions stated above, retain an insurable interest in the building so insured? (b) Did P., after the several transactions mentioned, retain any interest as assured in the policy, the same not having expired? (c) In other words, under all the facts stated above, and in the absence of any others, did P. continue to have an insurable interest in the property, and if so, did he also have insurance thereon?

2. Where P. was the owner of improved real estate, and, on October 10, 1918, procured a loan thereon from S., evidenced by a promissory note and secured by a deed of conveyance to the property, and where on the date of the loan P. procured and paid for a policy of fire insurance upon a building situated upon the land included in the security deed, in which policy it was stipulated that the insurer "does insure" P. "for the term of three years," and in which was contained what is called the "New York standard mortgage clause," stipulating, among other things, that "loss or damage, if any, under this policy, shall be payable to" S. "as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," and that "whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owners, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all the securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of her claim;" and a further clause stipulating that "if this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment;" and

where thereafter, on October 16, 1919, P. by a deed of conveyance sold and conveyed to H. S. all of his interest in the real estate, subject, however, to the loan and the security deed in favor of S., and thereupon notified the insurer that the property in question had been sold and that the insurance under the policy was to be payable, in case of loss, first to S., and that the interest of P., with the exception of the above-quoted loss-payable clause to S., had been transferred to H. S., and on August 4, 1920, H. S. contracted to sell the property to K., and thereupon executed to K. a bond for title, under which K. went into possession of the property, entries having been made upon the policy, signed by the insurer only, showing that it accepted notice respectively on October 18, 1919, and on August 9, 1920, that the interest of P. "as assured" had been transferred to H. S., and that the interest of H. S. "as assured" had been transferred to K., but it not appearing from the entries themselves by whom or in what form such notices were given; and where on April 2, 1921, while the loan first above mentioned was still outstanding and unpaid, and while the policy was still in force, the house so insured was wilfully and criminally set on fire and destroyed by K., without the knowledge or consent of P., who "had nothing to do with the burning of the same, nor was it burned through his procurement," and where the insurer thereupon claimed that "there was no liability existing under the policy in question to the mortgagor or owners of the property," and, without knowledge of P., paid to S., "under the terms of the New York standard mortgage clause attached to said policy," the above-mentioned note and coupons attached, not exceeding the amount of the policy, and in consideration of such payment and upon the request of the insurer the note and coupons and the security deed were transferred, assigned, and delivered by S. to the insurer, including a conveyance of the title to S. to the property described in the security deed, the insurer having refused to pay the note and coupons held by S. until the transfers and assignments above referred to were made and the policy surrendered to the insurer, from whose possession it now comes; and where there are no other facts illustrating the rights and liabilities of the parties: (a) Did such payment by the insurer to S. operate as an extinguishment of the note and coupons as to P., notwithstanding the transfer thereon with the securities to the

insurer? (b) Was the payment by the insurer to S. a payment upon the policy as to P.? (c) Is P. entitled to assert the same as a payment, satisfaction, or discharge of the note and coupons when sued thereon by the insurer or transferee?

*Etheridge, Sams & Etheridge,* for plaintiff in error.

*Smith, Hammond & Smith,* contra.

BECK, P. J. Questions involving most of the material facts in this case have been previously submitted to this court and answered in a decision in the case of *Pike* v. *Insurance Co.; 158 Ga.* 686 (124 S. E. 161). The enumeration of facts in the questions dealt with in that case will show the similarity of the questions. The opinion there rendered differentiates the case from that of *Scottish Union &c. Ins. Co.* v. *Colvard,* 135 *Ga.* 188 (68 S. E. 1097). With the statement of additional facts, which will appear from a comparison of the questions submitted in the case in 158 *Ga.,* just referred to, with the questions in the instant case, the court submits additional questions; and those questions are, (a) Did P., after the several transactions stated in the question, retain an insurable interest in the building so insured; and (b) did he retain any interest as assured in the policy, the same not having expired; and (c) in other words, under all the facts stated above, and the absence of any others, did P. continue to have an insurable interest in the property; and if so, did he also have insurance thereon? In the former decision in this case it was held: "It follows, that, under the former rulings of this court, if an owner of land on which there is a building obtains a loan and executes his notes for the amount and a deed to the property as security for the debt, and procures a contract of insurance in his own favor insuring the building against loss by fire, and causes the insurer to attach to the policy a New York mortgage clause in substance as stated in the question propounded by the Court of Appeals, and if after being so insured the building is destroyed and a loss ensues for which the insurer is liable to the person as whose property the building was insured, and in such circumstances the insurer pays the amount of the loss to the lender, asserting and claiming at the time of such payment that there is no liability to the person as whose property the building was insured, such payment will operate in favor of the borrower as a pro tanto discharge of the debt as against the lender, and the in-

surer will not acquire any equitable right of subrogation, or right by transfer of the notes and the security to maintain a suit against the borrower or the property for the amount so paid to the lender." But the court did not in that opinion directly adjudicate the question as to whether, after the several transactions stated in the question, P. continued to have an insurable interest in the property. We are of the opinion that he did have such insurable interest. It will be observed that from the question it appears that when, on October 16, 1919, P. by a deed of conveyance sold and conveyed to H. S. all of his interest in the real estate, it was done "subject to the loan and security deed in favor of" S.; and he thereupon notified the insurer that "the property in question had been sold, and that the insurance under the policy would be payable in case of loss, first, to" S., and that the interest of P., with the exception of the above-quoted loss-payable clause to S., had been transferred to H. S. We think that the stipulation that the property was sold and conveyed by P. to H. S., subject to the loan and security deed in favor of S., and the statement in the notification to the insurer that the property had been so sold, subject to the security deed, shows that the original owner of the property, P., would necessarily be benefited from the property's continuing to exist, and would suffer loss by its destruction. For if it continued to exist, though it had been sold and conveyed to a third party, it was there subject to the security deed executed to S., and if sold and the proceeds applied to the payment of the note secured by the deed to S., P. would be relieved to the extent that the proceeds would satisfy that note, and if it was equal to the amount of the note, principal and interest, it would entirely discharge the debt; and in case of the loss of the property insured by fire, he would suffer a corresponding loss.

In the case of Hanover Fire Ins. Co. *v.* Bohn, 48 Neb. 743, 750 (67 N. W. 774, 58 Am. St. R. 719), the Supreme Court of Nebraska said: "This contention [the contention of the insurer] involves the assumption that the Bohns at the date of the issuance of the policy in suit had no insurable interest in the insured property. Is this contention correct? What is an insurable interest? In German Ins. Co. of Freeport, Ill. *v.* Hyman, 34 Neb. 704 [52 N. W. 401], Post, J., speaking to this question, said: 'An interest, to be insurable, does not depend necessarily

upon the ownership of the property. It may be a special or limited interest disconnected from any title, lien, or possession. If the holder of an interest in property will suffer loss by its destruction, he may indemnify himself therefrom by a contract of insurance. If, by the loss, the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien arising thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest.' " In the case of Williams v. Insurance Co., 107 Mass. 377 [9 Am. R. 41], it was said: "It is now well established that even one who has no title, legal or equitable, in the property, and no present possession or right of possession thereof, yet has an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction." In Waring v. Loder, 53 N. Y. 580, it was held that where one had mortgaged real estate and secured his debt and afterwards conveyed the real estate, he still had an insurable interest in the property. From the statement of facts in the Waring case it appears that the defendant executed a mortgage providing that in case of his failure to keep the buildings insured the mortgagee might insure the same as further security, and add the premiums to the principal. The mortgagee took an insurance, charging the premiums to the defendant. Defendant sold and conveyed the premises. Plaintiff, as assignee of the mortgage, commenced foreclosure, claiming the premiums paid. Before judgment the buildings were burned. Upon sale there was a deficiency, and judgment therefor was entered against defendant. The insurers paid the deficiency upon assignment of the judgment, refusing to pay without such assignment. It was in that case held that the receipt of the amount of the deficiency from the insurer extinguished the judgment, and the latter took nothing by the assignment; and in the course of the opinion it was said: "The mortgagor had an insurable interest. When the mortgage was given he had the legal title to the land on which the insured building stood. When he sold the land, he had still an interest in the preservation of the property, in order that his debt might be paid out of it, the land as between him and his grantee being primarily charged with its payment. And this was, we think, an insurable interest within the cases. Crawford v. Hunter, 2 B. & P. N. R. 269; Herkimer v. Rice, 27 N. Y. 163 (a)." We

are aware that decisions seeming to hold contrary to what we have held above are to be found, but we think the better view is to hold that the insured, P., under the circumstances set forth, continued to have an insurable interest in the property. See Yale Law Journal, Feb., 1925, p. 444.

We are of the opinion that it follows from what was ruled in the case of *Pike* v. *Insurance Co.*, supra, and what we have ruled above as to the insurable interest of P. in the property after he sold the same to H. S., that the payment by the insurer to S. operated as an extinguishment of the note and coupons as to P., and that the payment by the insurer to S. was a payment upon the policy as to P., and that P. was entitled to assert the same as a payment and discharge of the notes and coupons when sued thereon.

*All the Justices concur, except Gilbert, J., absent for providential cause.*

### ON REHEARING.

BECK, P. J., dissenting. Though I am the writer of the opinion which has been handed down in this case, I have reached the conclusion, upon further consideration, that certain of the questions propounded by the Court of Appeals should have received a different answer from that given in the opinion as it stands. I do not dissent from the holding that the insured, designated as P. in the question, under the circumstances set forth continued to have an insurable interest in the property. It is true that several of the cases cited to support that part of the opinion differed from the present case in many respects, and that the doctrines which they lay down were to a certain extent obiter; but I thought, upon examining the cases, and still think, that the doctrines laid down were sound, as touching the question of P.'s insurable interest in the property. But I do not think that he continued to have an interest in the policy of insurance after the transfer of the property and the policy. While he continued to have an insurable interest, that interest was not insured. I do not think, when the property insured was destroyed by fire, that P. could have possibly maintained, at law or in equity, a suit for any part of the insurance money; and that for the reason he had no insurance upon his interest in the property. As the policy finally stood, the assignee K. was the sole owner of the policy, except as to S.,

who held the legal title to the property by virtue of a loan deed. "Where an assignment of the policy to a purchaser of the insured property has been duly assented to by insurer, a new and independent contract arises between the insurer and assignee." This statement of a general principle is taken from 26 C. J. 134, § 157, and is supported by decisions of the courts of last resort in many States. And I am of the opinion that the application of that principle in this case requires a different answer to the questions propounded by the Court of Appeals, other than that as to whether P. continued to have an insurable interest in the property.

Mr. Justice Gilbert concurs in this dissent.